

**Sanford Heisler Sharp, LLP**
1350 Avenue of the Americas, Floor 31
New York, NY 10019
Telephone: (646) 402-5650
Fax: (646) 402-5651
www.sanfordheisler.com

*Andrew Melzer*, Partner
(646) 402-5657
amelzer@sanfordheisler.com

New York | Washington D.C. | San Francisco | San Diego | Nashville | Baltimore

July 24, 2018

**VIA E-MAIL**
The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *Ravina v. Columbia University and Geert Bekaert*, 16-cv-2137 (RA)

Dear Judge Abrams:

Plaintiff writes in response to Columbia's proposed changes to the Court's jury instructions. Plaintiff disagrees with Columbia's attempt to revise the jury instructions and opposes Columbia's changes. For present purposes, Plaintiff addresses those comments which have been adopted by or are being considered by the Court in its latest version of the instructions (July 24, 12:14 AM version.

First, Plaintiff objects to the insertion of language suggesting that personality conflicts do not qualify as retaliatory acts. (Page 16) Virtually any act can qualify as retaliatory depending on the circumstances. For example, in *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 116 (2d Cir. 2013), the court held that shunning a plaintiff in the workplace and excluding her from meetings may satisfy the standard for retaliation and was not non-retaliatory as a matter of law.

Second, Plaintiff objects to the inclusion of Columbia's "business judgment instruction" on page 19: "I note that it is not the role of the jury to simply second-guess employment decisions. An employer may act against an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all—but not for a discriminatory and/or retaliatory reason." The business judgment rule is a doctrine of corporate law and applies most often applies in derivative suits.  The remainder of the instruction restates the employment "at-will" doctrine and obscures the legal standard for Plaintiff's NYCHRL discrimination claims. Columbia does not cite to NYCHRL cases that support the instruction on page 19 just discussed. Further, this language is misleading because Plaintiff's claims do not concern traditional employment "decisions."

   Even on Plaintiff's tenure-related claim, Columbia's own motivations and reasons for denying tenure are not the central concern. Under the cat's paw theory, an employer may be liable for discrimination or retaliation even where it does not act with an improper motive. Plaintiff claims that Columbia was negligent in failing to prevent Bekaert's conduct from influencing or affecting the outcome of her tenure proceedings – by neglecting to curtail his behavior and by refusing to make reasonable accommodations to address the apparent effects of that behavior. *See, e.g., Vasquez v. Empress Ambulance Serv.*, 835 F.3d 267 (2d Cir. 2016). An employer can be liable for acting based on "bad reasons" or "erroneous facts," even where it lacks discriminatory or retaliatory intent, if the decision is influenced by a biased actor.

   In addition, the instruction on page 19 admonishing the jury against second-guessing Columbia's employment decisions would be misleading because the tenure vote proceeded on the express presumption that any decision would be second-guessed in this litigation. "The case is now in the courts and it is up to the courts to adjudicate." PL.'s Ex. 158. Columbia persuaded the faculty to vote by instructing them that they should limit their considerations to Plaintiff's record as it stood and that the Court would ultimately decide her claims.

   Third, Plaintiff objects to Columbia's attempt to rewrite the law on liability for punitive damages. The final instruction should closely adhere to the New York Court of Appeals' recent decision in *Chauca* v. *Abraham,* 30 N.Y.3d 325 (2017), which establishes the definitive standard for awarding punitive damages under the NYCHRL. *Chauca* makes clear that its standard is intended to be a liberal one, and any instruction should not suggest otherwise. For example, *Chauca* states that its test represents "the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages." *Id*. at 333. And, it indicates that its liberal gloss on the common law standard does not apply "in any context beyond the NYCHRL." *Id*. at 334 n.2.

   Accordingly, Plaintiff suggests that the Court should excise the word "flagrant" from the bottom of page 20 of the latest version of the instructions. This term does not appear in the *Chauca* decision and may increase Plaintiff's burden.

   Likewise, Plaintiff objects to insertion of the factors enumerated in N.Y.C. Admin. Code § 8-107(13)(d). As the Court suggests, these factors relate to the *amount* of punitive damages, not *whether* Columbia is *liable* for punitive damages. N.Y.C. Admin. Code § 8-107(13)(e) ("the demonstration of any or all of the factors listed above [referring to § 8-107(13)(d)] in addition to any other relevant factors shall be considered . . . in mitigation of . . . punitive damages"). In this context, "mitigation" clearly refers to amount. *See id*. ("mitigation of the amount of civil penalties to be imposed"); *see also* Black's Law Dictionary, 8th Edition, 2004, defining "mitigate"

Hon. Ronnie Abrams
July 24, 2018
Page 3 of 3

as "to make less severe or intense" and "mitigation of damages doctrine" as reducing recovery.[1]

Columbia's proposed instructions under §§ 8-107(13)(d) & (e) are thus improper and will only confuse the jury.

For all these reasons, the Court should adhere to its original instructions (dated July 23, 2018) on the points discussed in this letter.

We thank the Court for its attention to this matter.

Respectfully submitted,

Andrew Melzer

---

[1] The factors are also relevant to one of the three avenues for imputing liability to a corporate defendant on a discrimination claim.