# Exhibit E

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____
                                   )
ENRICHETTA RAVINA,                 )
                                   )
            Plaintiff,             )  Case No.:
                                   )  1:16-cv-02137(RA)
    vs.                            )
                                   )
COLUMBIA UNIVERSITY AKA THE        )
TRUSTEES OF COLUMBIA               )
UNIVERSITY IN THE CITY OF NEW      )
YORK AND GEERT BEKAERT,            )
                                   )
            Defendants.            )
_____)

        VIDEOTAPED DEPOSITION of RONALD SCHOUTEN, M.D., J.D., held on Tuesday, May 22, 2018, at 10:35 a.m., at the offices of Sanford Heisler Sharp, LLP, 1350 Avenue of the Americas, New York, New York 10019, before Joshua B. Edwards, a Registered Diplomate Reporter, Certified Realtime Reporter, Certified LiveNote Reporter, and Notary Public of the State of New York.

Magna Legal Services
(866) 624-6221
www.MagnaLS.com



Page 78

```
 1     A.   Okay.  If I understand the question correctly
 2  it's, like, why did I bother with the first
 3  eleven pages and why didn't I just give you the
 4  opinions and conclusion?
 5     Q.   What's the purpose behind the preceding pages
 6  before your opinions?
 7          MR. GROSSMAN-BODER:  Objection to form.
 8     A.   Forensic psychiatry and clinical psychiatry
 9  treatment of patients differ.  They differ in a number
10  of ways.  And one of the ways they differ is that our
11  obligation when we do a forensic evaluation is to be as
12  objective as possible and to provide the evidence base
13  for our conclusion.
14          So not so many years ago, expert witnesses
15  would indeed provide a letter, especially in, say,
16  civil commitment cases and things like that and say I
17  am Dr. So-and-so, and in my opinion, this person is
18  mentally ill and in need of hospitalization, the end.
19  Or I am Dr. So-and-so.  I have evaluated Mr. Jones who
20  is charged with attempted murder.  In my opinion, he's
21  not criminally responsible.
22          So the field has evolved in such a way driven
23  in part by in Massachusetts our -- a process about
24  designating people as designated psychiatrists and
25  psychologists to make sure that the trier of fact has
```

Page 79

```
 1  an evidence base to look at that supports the
 2  conclusions that are offered.  So rather than sort of
 3  ipse dixit I-said-so testimony, it's about providing a
 4  background.
 5     Q.   So the pages before your opinions and
 6  discussion are background, correct?
 7     A.   Yes.
 8          MR. GROSSMAN-BODER:  Objection to form.
 9     Q.   Your amended report completely supersedes
10  your December 7, 2017, report; is that correct?
11     A.   Correct.
12     Q.   What prompted you to amend your initial
13  expert report?
14     A.   Received additional medical records
15  suggesting that, especially related to the thyroid
16  issue that, in fact, there was evidence to suggest that
17  there was not -- that Ms. Ravina was not suffering from
18  a thyroid problem until about April of 2017.
19     Q.   After plaintiff's counsel raised concerns
20  regarding your initial report, did you consider
21  withdrawing as an expert?
22          MR. GROSSMAN-BODER:  Objection to form.  And
23  calling for a legal conclusion.
24     A.   Again, please?
25     Q.   After plaintiff's counsel raised concerns
```

Page 80

```
 1  about your initial report, did you consider withdrawing
 2  as an expert in this case?
 3          MR. GROSSMAN-BODER:  Objection to form same
 4  okay.
 5     A.   I don't recall plaintiff's counsel -- or
 6  wait.  Plaintiff's counsel?
 7     Q.   Yes.
 8     A.   I'm not aware of any objections from
 9  plaintiff's counsel?
10     Q.   Are you aware that plaintiff's counsel made a
11  request that you withdraw?
12     A.   No.
13     Q.   Did you ever discuss with anyone the
14  possibility of withdrawing your expert report?
15          MR. GROSSMAN-BODER:  Objection.  Objection.
16  I am also going to direct the witness not to answer
17  that question.
18     Q.   Besides counsel, did you ever discuss with
19  anyone the possibility of withdrawing your expert
20  report?
21     A.   No.
22     Q.   Are all of your opinions pertaining to this
23  case contained in your April 16, 2018, report?
24          MR. GROSSMAN-BODER:  Objection to form.
25     A.   Again, please?
```

Page 81

```
 1     Q.   Are all of your opinions pertaining to this
 2  case contained in your April 16, 2018, report?
 3          MR. GROSSMAN-BODER:  Objection to form.
 4     A.   Related to Ms. Ravina's diagnosis and the
 5  basis for that diagnosis, yes.
 6     Q.   You don't have any opinions about this case
 7  that are not expressed in your April 16, 2018, report,
 8  do you?
 9          MR. GROSSMAN-BODER:  Objection to form.
10     A.   About the specific allegations in the case
11  and claims?  No.
12     Q.   Both your initial expert report and your
13  amended expert report are titled "Forensic Assessment."
14  What do you mean by a "Forensic Assessment"?
15     A.   Meaning that I looked over a variety of
16  documents, again, in pursuit of reaching an objective
17  conclusion.  And they include deposition testimony of
18  Ms. Ravina, of Mr. Bekaert, of Dean -- I'm blocking on
19  his name now; last name starts with an "H" -- of
20  Dr. Silbert.  I looked at Ms. Ravina's medical records.
21  I looked at as much information as I could to reach
22  that conclusion.
23          That's what makes it an forensic assessment
24  as opposed to a clinical assessment which is one in
25  which the treating clinician meets with the patient and
```



Page 242

1  for the emotional distress and symptoms claimed by
2  Ms. Ravina and Dr. Silbert."
3       Q.  You do not claim to know what causes
4  Ms. Ravina's emotional distress, correct?
5       A.  Correct.
6       Q.  And you have not ruled out that Columbia and
7  Professor Bekaert's alleged discrimination and
8  retaliation against Ms. Ravina may have been the sole
9  cause of Ms. Ravina's emotional distress, correct?
10          MR. GROSSMAN-BODER:  Objection to form.  And
11  again calling for a legal conclusion, two legal
12  conclusions.
13       A.  Again, I leave it to the trier of fact to
14  determine the validity of the allegations.  If there's
15  a determination that all of these things occurred as
16  alleged, no, I haven't ruled that out.
17       Q.  You have just identified possible causes,
18  correct?
19       A.  Correct.
20       Q.  You are not giving an opinion that these
21  possible causes were actual causes of Ms. Ravina's
22  emotional distress, correct?
23          MR. GROSSMAN-BODER:  Objection to form.
24       A.  I'm not saying with specificity that they
25  were.  They were likely contributors to her overall

Page 243

1  emotional state.
2       Q.  But you were just saying that they were
3  likely causes, not actual causes, correct?
4          MR. GROSSMAN-BODER:  Objection to form.  And
5  also misconstruing what's written on the page.
6       Q.  I will just withdraw the question.
7          Are you saying that the items listed on
8  page 12 are likely causes or possible causes?  Because
9  your amended report lists them as possible causes.
10          MR. GROSSMAN-BODER:  Objection to form.  And
11  which items on page 12?
12       A.  They are possible causes.  I'm not ascribing
13  a likelihood, but I would say that given everything
14  that she was going through, it's hard to imagine that
15  these things would not be affecting her emotional
16  state.
17       Q.  Why aren't you giving an opinion as to actual
18  causation?
19          MR. GROSSMAN-BODER:  Objection to form.
20  Calling for a legal conclusion.
21       A.  Well, it would require me to make a
22  determination about the validity of her allegations.
23       Q.  Doesn't the fact that you haven't evaluated
24  Ms. Ravina hinder your ability to offer a conclusion as
25  to causation?

Page 244

1          MR. GROSSMAN-BODER:  Objection to form.
2  Calling for a legal conclusion.  And asked and
3  answered.
4       A.  Potentially, although even after seeing her
5  if I, you know, had done so, I might still be in the
6  same position of saying, well, you know, I've talked to
7  her and she tells me as she testified and Dr. Silbert
8  testified that the litigation process is very
9  stressful.  Being deposed is stressful.  All of these
10  things, that conflict with her coauthor is stressful,
11  conflict, you know, and at the end of the day, I may
12  have come back and said okay, the paragraph is exactly
13  the same.
14       Q.  Does the list of possible causes that you've
15  included on page 12 reflect the entirety of the items
16  that you believe could have caused Ms. Ravina's
17  emotional distress?
18          MR. GROSSMAN-BODER:  Objection to form.
19       A.  Those were the things that certainly came to
20  mind in writing my report.
21       Q.  Does the list of possible causes that you've
22  included here reflect the entirety of the items that
23  you are opining on as to the possible causes of
24  Ms. Ravina's emotional distress?
25          MR. GROSSMAN-BODER:  Objection to form.  And

Page 245

1  just asked and answered.
2       A.  I guess one item that I didn't include here
3  was the -- and it's kind of distant -- is ███████
4  ████████████████████████████████████████████████████
5  ██
6       Q.  That's not an opinion as to possible causes
7  that you offered in this expert report that you signed
8  off on, on April 26, 2018, correct?
9       A.  Correct.  I noted it elsewhere in the report,
10  but I didn't list it here.
11       Q.  You are not opining that anything about
12  Ms. Ravina's childhood or family background caused her
13  emotional distress, correct?
14       A.  Correct.
15       Q.  You are not opining that Ms. Ravina had any
16  preexisting medical conditions that caused her
17  emotional distress, correct?
18          MR. GROSSMAN-BODER:  Objection to form.
19       A.  Correct.
20       Q.  So all of the possible causes of emotional
21  distress that you identify on page 12 pertain to
22  Ms. Ravina's experiences at Columbia or her
23  interactions with Professor Bekaert, correct?
24          MR. GROSSMAN-BODER:  Objection to form.  And
25  mischaracterizing the document.

