## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ENRICHETTA RAVINA,**<br><br>    **PLAINTIFF,**<br><br>**-- against --**<br><br>**COLUMBIA UNIVERSITY**<br>**A/K/A THE TRUSTEES OF COLUMBIA**<br>**UNIVERSITY IN THE CITY OF NEW YORK**<br>**AND GEERT BEKAERT,**<br><br>    **DEFENDANTS.** | **Case No. 1:16-cv-02137-RA** |

### DECLARATION OF DAVID SANFORD
### IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

I, David Sanford, hereby declare as follows:

1.      I am a founding partner and the Chairman of Sanford Heisler Sharp, LLP ("Sanford Heisler Sharp").  Sanford Heisler Sharp is counsel for Plaintiff Enrichetta Ravina in this lawsuit.

2.      I make this Declaration in support of Plaintiff's Motion for Attorneys' Fees and Costs based upon personal knowledge.  If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

**I.      Sanford Heisler Sharp Is a Preeminent Plaintiffs' Firm**

1.      Formed in 2004, Sanford Heisler Sharp is a leading plaintiffs' firm dedicated primarily to civil rights and employment litigation matters. The Firm has expertise in complex employment matters and exclusively represents plaintiffs in these cases.

2.      Sanford Heisler Sharp has served as counsel for plaintiffs in numerous groundbreaking gender discrimination actions, including *Campbell et al. v. Chadbourne & Parke LLP*, No. 1:16-cv-06832 (S.D.N.Y.) ($3.1 million settlement of Equal Pay Act claims); *Dickerson*

*et al. v. Novartis Corp. et al.*, No. 15-CV-1980 (S.D.N.Y.) ($8 million class settlement in gender discrimination class case); *Wellens et al. v. Daiichi Sankyo, Inc*., No. C 13-00581 (N.D. Cal.) ($8.2 million class settlement in gender discrimination case); *Barrett et al. v. Forest Laboratories, Inc. et al.*, No. 1:12-cv-05224-RA (S.D.N.Y.) ($4 million class settlement in gender discrimination class action for pay, promotion, and pregnancy discrimination claims); *Smith et al. v. Merck & Co., Inc.*, No. 3:13-cv-02970 (D.N.J.) (preliminary approval of $6.2 million class settlement involving pay, promotion, and pregnancy discrimination claims).

3.      Sanford Heisler Sharp has achieved significant recoveries and injunctive relief for its clients, including the largest verdict ever awarded in an employment discrimination class action in the United States.  *See Velez et al. v. Novartis Pharmaceuticals Corp.*, No. 04-cv-9194 (S.D.N.Y) (jury verdict of $250 million in punitive damages awarded to more than 7,000 female sales representatives and $3.6 million in compensatory damages awarded to 12 class members).

4.      The Firm has been repeatedly recognized for its superb representation of its clients and high standing at the bar.  For example, at the final fairness hearing in *Velez et al. v. Novartis Pharmaceuticals Corp.*, the court observed that the firm had achieved an "extraordinary" result: "This was a well prepared case. It was a brilliantly tried case by plaintiff's counsel . . . and it yielded a one-of-a-kind result, and that has led to a one-of-a-kind settlement."

5.      At the final fairness hearing in *Hernandez et al. v. C&S Wholesale Grocers, Inc.*, No. 7:06-CV-02675 (S.D.N.Y. 2008), the court described the firm as "exceptionally able and experienced," praised "the work that counsel have put in, not just in terms of the quantity, but what it was that counsel did, with obviously the tremendous amount of work," and acknowledged that counsel achieved a highly favorable result in "a very complex dispute, both in terms of the law and in terms of the facts."

6.      In *Zolkos v. Scriptfleet, Inc*. 2014 WL 7011819, at *5 (N.D. Ill. 2014), the district court appointed Sanford Heisler Sharp, among other firms, as Class Counsel in recognition of the Firm's deep experience in complex employment litigation. The court stated:

> Sanford Heisler is very experienced in complex class and collective litigation . . . and has been repeatedly recognized for its skilled and effective representation. See *Stiller v. Costco*, No. 09 Civ. 2473, 2010 U.S. Dist. LEXIS 140297, 2010 WL 5597272 (S.D. Cal. Dec. 13, 2010) ("Sanford, Wittels & Heisler, LLP [Sanford Heisler Sharp's former name] . . . [is] experienced in employment and wage-and-hour class action litigation."); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194, 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877852, at *10 (S.D.N.Y. Nov. 30, 2010) ("Here, Class Counsel, Sanford Wittels & Heisler LLP, has just the sort of established record contemplated by the Rules."); *Bellifemine v. Sanofi-Aventis*, No. 07 Civ. 2207, 2010 U.S. Dist. LEXIS 79679, 2010 WL 3119374, at *1 (S.D.N.Y. Aug. 6, 2010) (recognizing Sanford Heisler as having "an established record of competent and successful prosecution of large . . . class actions").

7.      In *Jane Doe 2 v. The Georgetown Synagogue et al.*, Civil Action No. 2014 CAB 8073 (D.C. Super. Ct. 2018), the court concluded the case by praising the work of counsel on the case, stating, "I commend you highly for the work that you've done, the skill that you've demonstrated, and for the significant outcome that has occurred as a result of those efforts."

8.      Among the many accolades the Firm has received, Sanford Heisler Sharp has been recognized as an "AV" rated firm, the "Employment Group of the Year" by *Law360* (2016 and 2018), the "Best Law Firm National Tier 1 Employment Firm" by *U.S. News & World Report* (2016 to 2019), and "Elite Trial Lawyers" by the *National Law Journal* (2014, 2015, and 2019).

## II.     <u>Sanford Heisler Sharp Staffed This Case With High-Caliber Legal Professionals</u>

9.      Sanford Heisler Sharp routinely litigates against the nation's largest institutions and top defense firms, consistently producing high-quality work.

10.     Sanford Heisler Sharp employs approximately 50 lawyers.  The Firm employs legal professionals who are exceptionally accomplished and well-educated, including many who have

graduated from the country's best undergraduate and law schools; in addition, many of the Firm's attorneys have completed prestigious clerkships.  In recognition of the high caliber of Sanford Heisler Sharp's lawyers, the Firm has been recognized by Above the Law as one of the "Top Litigation Firms by Law School Pedigree."

11.     Below, I summarize the contributions and professional background of each attorney and legal assistant who devoted more than 100 hours to this case.

**A.     David Sanford**

12.     I have served as co-lead counsel on this case and was responsible for shaping overall strategy from start to finish.  I also was responsible for key aspects of discovery and trial, including defending Plaintiff's deposition, taking the depositions of Defendant Geert Bekaert and Columbia Business School's Dean Glenn Hubbard, delivering Plaintiff's opening statement at trial, examining trial witness Professor Patrick Bolton, and delivering Plaintiff's closing arguments in both the liability and damages phases of trial.

13.     I am the Chairman and a founding partner of Sanford Heisler Sharp.  I graduated from Stanford Law School in 1995.  I was a law clerk for Judge Gladys Kessler of the United States District Court for the District of Columbia from 1995 through 1996.  I am a member of the Maryland State bar, the District of Columbia bar, and the New York bar.  I am admitted to the U.S. District Courts for the Southern District of New York, the District of Maryland, the District of Columbia, the Northern District of Florida, and the Central District of Illinois, as well as the U.S. Courts of Appeals for the First, Second, and Seventh Circuits and the District of Columbia, and the United States Supreme Court.

14.     Since 2001, I have obtained hundreds of individual settlements and over 30 class action settlements in employment matters, and I have recovered more than one billion dollars for

individual clients and the United States government.  I am currently serving as lead counsel in numerous individual, class, and *qui tam* matters.  I was lead class counsel and lead trial counsel in *Velez et al. v. Novartis Pharmaceuticals Corp.*, which resulted in the largest verdict in a Title VII discrimination class action in United States history.

15.     I was inducted into the *National Law Journal*'s Elite Trial Lawyers Hall of Fame and am listed among the top 100 trial lawyers in America by the National Trial Lawyers. I have been recognized as the 2019 "Labor and Employment Attorney of the Year" by *Benchmark Litigation*; as a "Plaintiffs' Lawyer Trailblazer" by *National Law Journal*; as a "Leading Plaintiff Employment Lawyer" by *Lawdragon*; as a "Top Employment Lawyer" by *American Lawyer*, *Corporate Counsel*, and the *National Law Journal*; and as an Employment MVP (for four years, including in 2018) and "Titan of the Plaintiffs' Bar" (in 2014 and 2018) by *Law360*.  In 2018, I was one of just three lawyers nationwide selected as a finalist for the Lawyer of the Year award by *American Lawyer*.  In addition, I have been rated "Band One" by *Chambers* and recognized as a "Super Lawyer" in both Washington, D.C. and New York. Since 2006, I have been AV-rated by Martindale-Hubbell, which is the highest rating awarded to an attorney by judges and attorneys throughout the United States.

**B.     Alexandra Harwin**

16.     Alexandra Harwin has served as co-lead counsel on this case. In this role, she managed and oversaw all aspects of the case from its inception, including conducting the initial investigation, drafting the pleadings, preparing submissions for mediation, managing all aspects of discovery, overseeing all motion practice, arguing numerous motions, and leading trial preparation. She supervised a complex discovery process involving the production of over 115,000 pages of documents (including successfully moving to compel the production of numerous

documents opposed by Defendants) and took the depositions of nearly a dozen key witnesses (including all of the depositions whose videos were shown at trial).  Ms. Harwin oversaw all aspects of Plaintiff's opposition to Defendants' motions for summary judgment, which required culling a voluminous factual record, and she oversaw the briefing of all motions *in limine*.  At trial, she examined Plaintiff during both the liability and damages phases of trial, examined Columbia's Director of Investigations Michael Dunn, supported the examinations of many other witnesses, and argued numerous motions, including defeating Defendants' respective Rule 50(a) motions.

17.     Ms. Harwin is a partner at Sanford Heisler Sharp and co-chair of Sanford Heisler Sharp's national Title VII Practice.  Ms. Harwin received her law degree in 2011 from Yale Law School, where she served as Managing Editor of the *Yale Journal of Law and Feminism* and a member of Yale's Supreme Court Advocacy Clinic.  She received her bachelor's degree *summa cum laude* in 2007 from Harvard University, where she was the highest-ranked student in her graduating class. She is a member of the bars of New York, New Jersey, the District of Columbia, and Maryland and is admitted to the U.S. District Court for the Southern District of New York.

18.     Ms. Harwin has been co-lead counsel in multiple cases involving claims of gender discrimination and retaliation, including *Campbell et al. v. Chadbourne & Parke LLP*, No.1:16-cv-06832 (S.D.N.Y.) and *Dickerson et al. v. Novartis Corporation et al.*, No.1:15-cv-01980 (S.D.N.Y.).  Ms. Harwin was one of just five employment lawyers nationwide named a Rising Star by *Law360* in 2017, and she was awarded regional star status for the Northeast in *Benchmark Litigation*'s 2018 ranking of labor and employment firms and lawyers.  She has also been named one of the Top 40 Under 40 Trial Lawyers in New York by the National Trial Lawyers Association. Her writing on legal issues has been featured in *The New York Times*, *Slate*, and *Law360*.

### C.     Melinda Koster

19.     Since April 2017, Melinda Koster has served as one of the primary attorneys on this case and has been integrally involved in all aspects of the litigation, including discovery, motion practice, and trial preparation.  During the course of the case, she drafted and responded to discovery requests, prepared deposition outlines and second-chaired numerous depositions of key witnesses, closely consulted with Plaintiff's expert witnesses and deposed Columbia's expert witness Dr. Ronald Schouten, drafted key motion papers and other submissions to the Court, and combed through the voluminous record to identify Plaintiff's trial exhibits.  At trial, she prepared outlines for the examinations of multiple trial witnesses, assisted in preparing Plaintiff's treating psychiatrist, Dr. Howard Silbert, for his trial examination, cross-examined Columbia Business School's Vice Dean Janet Horan, and second-chaired the examinations of multiple trial witnesses.

20.     Ms. Koster is Senior Litigation Counsel at Sanford Heisler Sharp. She received her bachelor's degree *summa cum laude* from Pomona College in 2006 and her law degree from Stanford Law School in 2012, where she was a Notes Editor for the *Stanford Law Review*, a student attorney in Stanford's Immigrants' Rights Clinic and Criminal Defense Clinic, and the recipient of the Gerald Gunther Prize for Outstanding Performance in Employment Law. Prior to joining Sanford Heisler Sharp, Ms. Koster clerked for the Honorable Julio M. Fuentes of the United States Court of Appeals for the Third Circuit and for the Honorable Esther Salas of the United States District Court for the District of New Jersey.  Before her district court and appellate clerkships, Ms. Koster worked as an attorney at a boutique plaintiffs'-side firm, where she represented whistleblowers.  Ms. Koster is a member of the New York bar, the U.S. District Court for the Southern District of New York, and the U.S. Court of Appeals for the Third Circuit.

21.     Ms. Koster has served as counsel in multiple cases involving claims of gender discrimination, including *Barrett et al. v. Forest Laboratories, Inc. et al.*, No. 1:12-cv-05224-RA (S.D.N.Y.), a nationwide class action on behalf of female pharmaceutical sales representatives, and *Urquhart-Bradley v. Cushman & Wakefield, Inc. et al.*, No. 1:18-cv-02213 (D.D.C.).   In addition, she presently serves as class counsel in several complex employment cases, including *Julian, et al. v. Metropolitan Life Insurance Co.*, No. 1:17-cv-00957 (S.D.N.Y.) and *Love v. Virginia Land Improvement Corp.*, No. 1:19-cv-00252 (E.D. Va.).

**D.     Andrew Melzer**

22.     Andrew Melzer has served as counsel on this case since 2016.  He managed all aspects of the case while Ms. Harwin was on maternity leave and played a prominent role in drafting critical briefs, including Plaintiff's oppositions to Defendants' motions for summary judgment, Plaintiff's motions *in limine*, and Plaintiff's post-trial briefing.  Mr. Melzer also examined a critical trial witness, Plaintiff's treating psychiatrist Dr. Howard Silbert.

23.     Mr. Melzer is a partner at Sanford Heisler Sharp and co-chair of the Firm's national wage and hour practice.  He has served as counsel in numerous cases involving claims of gender discrimination, including: *Smith et al. v. Merck*, No. 3:13-cv-02970 (D.N.J.), a nationwide class action on behalf of female pharmaceutical sales representatives; *da Silva Moore, et al. v. Publicis Groupe, et al.*, Civ. No. 11-CV-1279 (S.D.N.Y.), a class action on behalf of female public relations professionals; and *Campbell et al. v. Chadbourne & Parke LLP*, No. 1:16-cv-06832 (S.D.N.Y.). He has drafted briefs and petitions before U.S. Courts of Appeals, the United States Supreme Court, and the California Supreme Court.

24.     Mr. Melzer received his bachelor's degree from Yale University in 1999 and his law degree from New York University School of Law in 2003.  Prior to joining Sanford Heisler

Sharp, he served as a judicial law clerk on the Massachusetts Appeals Court for Chief Justice Christopher Armstrong.  Mr. Melzer was recognized as a "Super Lawyer" in New York in 2019, he was recognized as a regional star for the Northeast in *Benchmark Litigation*'s 2018 ranking of labor and employment firms and lawyers, and he was twice honored by Super Lawyers as a "Rising Star."  Mr. Melzer is admitted to the New York bar, the U.S. District Courts for the Northern and Southern Districts of New York, the U.S. Courts of Appeals for the Second and Ninth Circuits, and the United States Supreme Court.

   **E.**  **H. Vince McKnight**

   25.  H. Vincent McKnight was a key member of the trial team in this case.  He examined multiple witnesses at trial, including Columbia Business School's Dean Glenn Hubbard, Columbia University's Vice Provost Christopher Brown, Columbia Business School Professor Wei Jiang, and Defendant Geert Bekaert during the damages phase of trial.

   26.  Mr. McKnight is the managing partner of Sanford Heisler Sharp's Washington, D.C. office and co-chair of Sanford Heisler Sharp's national whistleblower practice. He received his bachelor's degree from Brown University in 1975 and his law degree from the University of Pennsylvania School of Law in 1978.  Mr. McKnight served as a law clerk to Chief Judge William C. Pryor on the District of Columbia Court of Appeals.  He is admitted to the Maryland and District of Columbia bars, the U.S. District Courts for the Southern District of New York, District of Maryland, and Eastern District of Pennsylvania, the U.S. Courts of Appeals for the Third, Fourth, and Seventh Circuits and the District of Columbia, and the United States Supreme Court.

   27.  Mr. McKnight has tried over 50 cases before juries in New York, Washington, D.C., Philadelphia, Baltimore, and elsewhere on a wide range of issues, including many groundbreaking civil rights and employment cases such as *Adams v. Cochran*, 597 A.2d. 28 (D.C.

1981) (the first departure from the employment-at-will doctrine in the District of Columbia) and *Mazie Keller v. Prince George County*, 927 F.2d. 952 (4th Cir. 1987) (in which the court rejected the notion that Title VII preempted a state employee from also pursuing a companion claim under 42 U.S.C. § 1983).

28.     Mr. McKnight was twice honored by *Lawdragon* as one of "500 Rising Stars" and as one of the "Leading Plaintiff's Lawyers in America." He has consistently received a rating of "AV" by Martindale-Hubbell and has been regularly selected as one of the organization's "Best Lawyers in America."  Mr. McKnight was selected by the Legal Network as a "Top Lawyer in Maryland" in 2014 and was awarded regional star status for the Northeast in *Benchmark Litigation*'s 2018 ranking of labor and employment firms and lawyers.  He has previously been recognized as a "Top DC attorney" in Super Lawyers.

### F.     Amy Donehower

29.     Amy Donehower was a member of Plaintiff's trial team and was responsible for drafting examination outlines for multiple witnesses, including Plaintiff and Defendant Bekaert, and assisting in preparing Plaintiff for her trial examination. She cross-examined Defendant Bekaert during the trial's liability phase and cross-examined defense witness Andrea Kiguel.

30.     Ms. Donehower served as Senior Litigation Counsel at Sanford Heisler Sharp. She received her bachelor's degree with honors from the University of Chicago in 2006 and her law degree in 2013 from Columbia Law School, where she was a James Kent Scholar and a Harlan Fiske Stone Scholar and a recipient of the Whitney North Seymour Medal for exceptional promise in trial advocacy.  Prior to joining Sanford Heisler Sharp, Ms. Donehower worked for five years at Boies Schiller Flexner LLP, where she tried multiple cases, including a multibillion-dollar

business valuation.  Ms. Donehower is admitted to the New York and Florida bars and the U.S. District Court for the Southern District of New York.

### G.    Joseph Kolker

31.    Joseph Kolker worked on this case from 2016 to 2017 and was critically involved in its discovery phase, including propounding discovery requests on both Defendants and drafting and responding to Defendants' interrogatories and requests for production of documents. Mr. Kolker also drafted deposition outlines for several fact witnesses, including Columbia Business School's Dean Glenn Hubbard and Division Chair Stephen Zeldes.

32.    Mr. Kolker served as a Litigation Fellow at Sanford Heisler Sharp.  He received his bachelor's degree *summa cum laude* from the University of Texas at Austin in 2010 and his law degree *magna cum laude* from Harvard Law School in 2016.  Mr. Kolker is admitted to the New York bar and the U.S. District Courts for the Southern and Eastern Districts of New York.

### H.    Hannah Wolf

33.    Hannah Wolf played a critical role in researching and drafting Plaintiff's motions *in limine* and post-trial motions.  In addition, she conducted legal research to support the litigation team's motion practice during the course of the trial.

34.    Ms. Wolf is an associate at Sanford Heisler Sharp.  She received her law degree in 2015 from New York University School of Law, where she was a Root-Tilden-Kern scholar and a member of NYU's Immigrant Rights Clinic.  Ms. Wolf received her bachelor's degree in Industrial and Labor Relations from Cornell University in 2011 and was a Fulbright Scholar from 2011 to 2012. Ms. Wolf is a member of the Tennessee bar, the U.S. District Courts for the Eastern, Middle, and Western Districts of Tennessee, and the U.S. Court of Appeals for the Sixth Circuit. Prior to joining Sanford Heisler Sharp, Ms. Wolf represented farmworkers in employment

discrimination cases and clerked for the Honorable Martha Daughtrey on the United States Court of Appeals for the Sixth Circuit.

### I.      Jonathan Hiles

35.      Jonathan Hiles played a critical role in researching and drafting Plaintiff's motions *in limine* and fee petition.  In addition, he conducted legal research to support the litigation team's motion practice during the course of the trial.

36.      Mr. Hiles served as an associate at Sanford Heisler Sharp.  He received his bachelor's degree *magna cum laude* from Brown University in 2010 and his law degree from Harvard Law School in 2016.  Prior to joining Sanford Heisler Sharp, Mr. Hiles clerked for the Honorable Richard Berman of the United States District Court for the Southern District of New York.  Mr. Hiles is a member of the New York bar, the U.S. District Courts for the Southern and Eastern Districts of New York, and the U.S. Court of Appeals for the Second Circuit.

### J.      Legal Assistants on the Case

37.      Melody Wong was a Senior Legal Assistant at Sanford Heisler Sharp.  As the primary legal assistant on this case, Ms. Wong worked on the matter for over two years and was integrally involved in all aspects of the case from its initial investigation through the trial.  Ms. Wong played a critical role in the discovery and summary judgment phases of the case, including helping attorneys prepare for multiple depositions, reviewing thousands of pages of documents produced by Defendants, and scouring the record for key evidence used at deposition and trial.  Ms. Wong received her bachelor's degree from Stanford University.

38.      Sophie Kosmacher was a Legal Assistant at Sanford Heisler Sharp.  Ms. Kosmacher played an important role in assisting attorneys during discovery in this case. She also assisted attorneys in connection with responding to Defendants' Requests for Admission and Requests for

Production, briefing discovery motions, and preparing Plaintiff's opposition to both Defendants' motions for summary judgment.  Ms. Kosmacher received her bachelor's degree from Vassar College.

39.     Kremena Mestanova was a Legal Assistant at Sanford Heisler Sharp.  As a legal assistant on this case, Ms. Mestanova assisted attorneys with critical trial preparation tasks, including preparing examination outlines, compiling exhibits, and drafting internal reference documents.  She further assisted attorneys in connection with the briefing of Plaintiff's motions *in limine* and post-trial motions.  Ms. Mestanova received her bachelor's degree from Vassar College.

40.     Ali Stack was a Legal Assistant at Sanford Heisler Sharp.  As a legal assistant on this case, Ms. Stack assisted attorneys with critical trial preparation tasks, including preparing examination outlines, compiling exhibits, and drafting internal reference documents.  Ms. Stack received her bachelor's degree from Stanford University.

41.     Talia Stender was a Senior Legal Assistant at Sanford Heisler Sharp.  Ms. Stender assisted attorneys with critical trial preparation tasks, including preparing examination outlines, compiling exhibits, and drafting internal reference documents.   Ms. Stender received her bachelor's degree from the University of California, Berkeley.

42.     Maya Inamura was a Senior Legal Assistant at Sanford Heisler Sharp.  Ms. Inamura conducted extensive document review of the parties' voluminous productions.  In addition, she assisted attorneys in preparing for multiple fact witness and expert depositions.  Ms. Inamura received her bachelor's degree from Columbia University.

43.     Cansu Colakoglu was a Legal Assistant at Sanford Heisler Sharp.  Ms. Colakoglu conducted extensive document review of the parties' productions.  Ms. Colakoglu received her bachelor's degree from Harvard University.

### III.    Prosecuting This Matter Required a Vast Expenditure of Staff Time and Resources

44.    Attached hereto as **Exhibit A** are time records listing all of the case-related work performed through July 12, 2019, for which Sanford Heisler Sharp is seeking compensation. Exhibit A also includes numerous time entries for which the Firm is not seeking compensation.

45.    Attached hereto as **Exhibit B** is a tabulation by timekeeper listing all of the time spent on this case through July 12, 2019, for which Sanford Heisler Sharp is seeking compensation. Exhibit B also tabulates the time spent by timekeepers for whom the Firm is not seeking compensation.

46.    As these time records reflect, Sanford Heisler Sharp devoted over 13,500 hours to this matter during the course of more than three years of representing Plaintiff, resulting in a total lodestar of over $8.5 million.  Further, Sanford Heisler Sharp devoted hundreds of additional hours to this case that are not included in those records, corresponding to approximately $250,000 in additional lodestar for which the Firm is not seeking compensation.

47.    This case entailed extensive document discovery.  The record included over 115,000 pages of documents.  Defendants propounded over 250 discovery requests, including 117 document requests, 98 requests for admission, and 40 interrogatories, that Sanford Heisler Sharp had to respond to individually. Defendants' discovery requests required Counsel to review and produce over 45,000 pages of documents and 85 audio recordings.

48.    In addition, Sanford Heisler Sharp reviewed and evaluated over 70,000 pages of documents produced by Defendants.  The allegations of Defendant Bekaert's research sabotage in particular required extensive document review of many dense and complex documents reflecting the parties' economic research.

49.    Defendants resisted the production of critical information that was relied upon in

14

surviving summary judgment and at trial.  Defendant Bekaert repeatedly failed to comply with his discovery obligations; it took repeated efforts by Sanford Heisler Sharp before Defendant Bekaert produced any discovery at all.  Defendant Bekaert also made sweeping, unilateral redactions to emails in which he disparaged Plaintiff, forcing Plaintiff's Counsel to seek Court intervention to obtain versions for use at trial.  Meanwhile, Columbia refused to produce other complaints about sexual harassment at Columbia Business School, and Sanford Heisler Sharp had to seek Court intervention to obtain these documents for use at trial.  Additionally, Columbia initially claimed that it had not retained the emails of key University administrators and only produced those documents after Plaintiff's Counsel objected.  Other discovery disputes consumed yet more time.

50.     The case entailed numerous fact depositions.  Defendants deposed Plaintiff for over 13.5 hours; this required Sanford Heisler Sharp to expend extensive efforts to prepare Plaintiff for and defend three separate days of deposition. Defendants' Rule 26(a)(1) disclosures identified over 50 other potential witnesses in the case, including many Columbia administrators to whom Plaintiff made legally-protected complaints of discrimination and retaliation.  In total, Sanford Heisler Sharp took the depositions of 10 of Defendants' fact witnesses (almost all of whom appeared as witnesses at trial, either live or by use of their videotaped depositions).

51.     This case involved substantial expert discovery.  Columbia designated three separate experts who produced five expert reports (including two amended reports); this required Sanford Heisler Sharp to take three expert depositions and expend time evaluating complex issues concerning medical conditions, economic damages, and social scientific research.  Counsel also worked closely with two experts who were critical in identifying and developing themes and evidence that Counsel relied upon to survive summary judgment and prevail at trial.  Counsel had

to defend the depositions of these experts and assisted in the preparation of expert reports, including two reports rebutting Columbia's social scientific expert.

52.     Defendants filed separate, extensive summary judgment motions, substantially increasing the work required from Plaintiff's Counsel in order to advance to trial.  Sanford Heisler Sharp had to comb through an extensive documentary record and nearly 5,000 pages of deposition transcripts in order to respond to over 330 purported facts asserted by Defendants.  In the process, Sanford Heisler Sharp identified critical facts that Defendants omitted from their papers.

53.     After Plaintiff overcame Defendants' summary judgment motions, Counsel had to engage in extensive pre-trial preparations to combat the vigorous defense mounted by Defendants. In their original list of proposed trial exhibits, Defendants identified what amounted to over 700 potential trial exhibits.  In their final pretrial statement, Defendants designated what amounted to nearly 600 trial exhibits and over 25 potential trial witnesses, including three expert witnesses. Further, a multitude of disputed evidentiary issues required Plaintiff to brief 15 motions *in limine*, including opposing Defendants' efforts to exclude more than a dozen categories of evidence.

54.     During the intense three-week trial that ensued, over a dozen witnesses testified, either live or via video deposition, and over 300 exhibits were admitted in evidence. Meanwhile, during trial Sanford Heisler Sharp briefed and argued various legal issues, including defeating Defendants' separate Rule 50(a) motions.

55.     Preparing for and conducting trial required a large investment of personnel and resources by Plaintiff's Counsel. Defendants routinely had at least five attorneys, as well as multiple paralegal and litigation consulting professionals, present in Court, and they provided no notice of the list of exhibits they would present on any given day.  To match their efforts, a team of Sanford Heisler Sharp attorneys and legal assistants worked around the clock to conduct the

trial, prepare witnesses, develop testimony outlines, brief and argue time-sensitive evidentiary and legal issues, engage in argument on the jury instructions and other legal matters, and prepare the opening statement and closing arguments.  Since prevailing at trial, Counsel has continued to expend time on this case, including defending against Defendant Bekaert's efforts to dismantle the jury verdict and preparing various submissions to the Court such as this fee petition.

56.     Plaintiff and her Counsel diligently sought to avoid all of this litigation activity. Sanford Heisler Sharp repeatedly attempted to settle this matter in order to prevent litigation, including participating in a mediation before filing Plaintiff's initial complaint, participating in a second mediation before filing her amended complaint, initiating settlement discussions with Columbia before depositions began, and broaching settlement again before trial. But Plaintiff received no response to her settlement overtures both on the eve of depositions and prior to trial. Even in response to the Court's offers of assistance, Columbia expressed no interest in settlement.

## IV.    Sanford Heisler Sharp Staffed This Case Efficiently

57.     For this case, Sanford Heisler Sharp delegated tasks among partners, non-partner attorneys, legal assistants, and other staff, such that senior attorneys with higher billing rates expended time only where it was more efficient or otherwise necessary for them to do so.  The time of senior partners, including David Sanford and Vincent McKnight, was used sparingly.

58.     The case was run by a core team of two attorneys and one legal assistant: attorney Alexandra Harwin managed and oversaw all aspects of the case from its inception, and attorney Melinda Koster and Melody Wong, the primary legal assistant for the case, were integral in all aspects of discovery, motion practice, and trial preparation.  Other Sanford Heisler Sharp attorneys and legal assistants played critical roles, supporting the case as needed to develop strategy, respond to voluminous discovery requests, review the extensive document production, prepare for specific

17

depositions, oppose summary judgment, brief other motions, examine trial witnesses, and undertake the preparation needed for trial.

59.     In recent hourly matters taken on by Sanford Heisler Sharp, the Firm's standard billing rates have included $1,200 per hour for Chairman David Sanford; $850-$1,000 per hour for other partners, including $850 per hour for Alexandra Harwin; $750-$850 per hour for senior litigation counsel; $425-$500 per hour for associates and litigation fellows; and $300 per hour for summer associates.  Moreover, while Sanford Heisler Sharp typically charges up to $295 per hour for senior legal assistants, as an exercise of billing discretion, Sanford Heisler Sharp seeks only $150 per hour for the work of legal assistants on this case.

60.     In approving attorneys' fees in *Jane Doe 2 v. The Georgetown Synagogue et al*., Civil Action No. 2014 CAB 8073 (D.C. Super. Ct. 2018), the court held that the Firm's billing rates (which included $1,200 per hour for David Sanford, $850 for Alexandra Harwin and other partners, and $425-$500 for associates and litigation fellows) were "reasonable and in line with the rates that would be charged by attorneys with comparable skill, experience and reputation."

## V.     Plaintiff Has Exercised Substantial Billing Discretion

61.     Sanford Heisler Sharp has written off various categories of time, omitted the time spent by numerous attorneys and legal assistants, and excised or reduced the time for various line items.  Counsel has not charged anything for many attorneys and staff members who worked on this case, including all legal professionals who devoted fewer than fifteen hours to this matter.  Counsel has also removed numerous other case-related charges, including many relating to case administration, publicizing the case, and integrating new attorneys and legal assistants into the litigation.  Additionally, Sanford Heisler Sharp has reduced the rate for its legal assistants by nearly fifty percent (50%).

62.     Following all of these adjustments and deductions, in an abundance of caution, Sanford Heisler Sharp voluntarily applied a further 25% reduction to the remaining lodestar.  Thus, Sanford Heisler Sharp is seeking a discounted fee award totaling $5,880,360.56.  With these adjustments and deductions, Sanford Heisler Sharp is forgoing recovery of approximately $2.7 million in lodestar that it expended in connection with this case.

## VI.     Prosecuting This Case Required Sanford Heisler Sharp to Incur Significant Costs

63.     Attached hereto as **Exhibit C** are expense records reflecting costs incurred by Sanford Heisler Sharp in connection with this case.  As reflected in those records, Sanford Heisler Sharp incurred $866,870.99 in expenses in pursuing this matter over the course of more than three years.  In an exercise of discretion, however, Sanford Heisler Sharp has voluntarily applied a 15% reduction and seeks a *reduced* award of $736,840.34 in costs.

64.     Sanford Heisler Sharp incurred $69,555.70 in vendor costs for depositions and related services, including transcription and videography costs.  These deposition costs were necessary in light of the large number of witnesses in this action, and deposition testimony was relied upon heavily at summary judgment and at trial.  At trial, deposition testimony was routinely used to impeach witnesses and refresh recollection, and excerpts of videotaped deposition testimony were shown.

65.     Sanford Heisler Sharp incurred $64,525.10 in costs associated with discovery and document storage, primarily comprised of costs to a third-party electronic discovery vendor, HLP Integration LLC, for costs for processing and producing discovery materials and storing over 115,000 pages of electronic documents.

66.     Sanford Heisler Sharp incurred $16,761.19 in costs for two mediation sessions with Columbia.  These mediations were conducted in a good-faith attempt to resolve this matter short

of trial.

67.     Sanford Heisler Sharp incurred $36,296.59 in costs relating to Court filings and proceedings, including transcripts from Court conferences and trial proceedings, filing fees, costs associated with motions for admission *pro hac vice*, and third-party vendor costs for printing and delivering exhibits and courtesy copies.

68.     Sanford Heisler Sharp incurred $355,984.71 in costs for trial consulting and support services performed by DOAR trial consultants.  Given the subtlety and complexity of Plaintiff's allegations, it was essential to work with experienced, sophisticated trial consultants who helped select the jury, frame and present the issues for trial, and create trial graphics.

69.     Sanford Heisler Sharp worked closely with two experts, Dr. Caren Goldberg and Professor Deborah Rhode, who were critical in identifying and developing themes and evidence that Plaintiff relied upon in surviving summary judgment and prevailing at trial.

70.     Drawing upon her expertise as an academic for over twenty years in the field of Human Resources Management, Dr. Goldberg provided essential consulting to Sanford Heisler Sharp regarding the norms governing employer policies, practices, and procedures concerning discrimination and retaliation.  Counsel relied upon Dr. Goldberg's expertise and strategic insights at summary judgment to expose the inadequacies of Columbia's policies and the deficiencies of its response to Plaintiff's legally-protected complaints.  Likewise, Dr. Goldberg's strategic insights assisted Counsel in identifying important exhibits for use at trial, developing pertinent lines of inquiry for numerous trial witnesses on the topics of Columbia's policies and response to Plaintiff's protected activity, and distilling key themes for presentation to the jury.  Sanford Heisler Sharp incurred $116,291.81 in costs for Dr. Goldberg, including fees for approximately 215 hours

on this matter at a rate of $525 per hour and modest expenses associated with travel from Washington, D.C. for her deposition at Proskauer Rose's New York office.

71.    Professor Deborah Rhode, the Ernest W. McFarland Professor of Law and the Director of the Center on the Legal Profession at Stanford University, is one of the country's preeminent experts on gender bias, with particular expertise regarding academic settings. Professor Rhode's deep expertise concerning the institutional dynamics of academia shaped Counsel's development of the themes presented to survive summary judgment and win at trial. Indeed, the themes elicited during the direct examination of Professor Ravina and in the opening statement and closing arguments were developed in close consultation with Professor Rhode. Sanford Heisler Sharp incurred $95,316.83 in costs for Professor Rhode, including fees for approximately 100 hours on this matter at a rate of $950 per hour.

72.    Sanford Heisler Sharp incurred approximately $112,139.06 in incidental expenses associated with the litigation.  This includes $91,963.01 in costs associated with lodging for trial; in order to facilitate the around-the-clock teamwork demanded by the three-week trial, lodging was provided to certain members of the trial team who resided outside of Manhattan.  This also includes $20,176.05 in total costs for working meals and transportation associated with Sanford Heisler Sharp's representation of Plaintiff, including mediation, discovery, case filings, and trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 25th day of July, 2019, in Boston, Massachusetts.

David Sanford