USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/6/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ENRICHETTA RAVINA,

                        Plaintiff,

              -v-

COLUMBIA UNIVERSITY and GEERT
BEKAERT,

                        Defendants.

No. 16-CV-2137 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

       Plaintiff Enrichetta Ravina, a former junior faculty member at Columbia Business School, brought this action against Geert Bekaert, a tenured member of the faculty, and Columbia University alleging, *inter alia*, gender discrimination and retaliation in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a), (7). After a fifteen-day trial, a jury found that Ravina failed to prove that either Bekaert or Columbia had discriminated against her, but that Bekaert had retaliated against her for accusing him of sexual harassment. The jury found that Columbia was not liable for any retaliatory acts of its own but that it was nonetheless strictly liable under the NYCHRL for Bekaert's retaliatory conduct. *See id.* § 8-107(13)(a). The jury awarded Ravina $750,000 in compensatory damages against Bekaert and Columbia and $500,000 in punitive damages against Bekaert only, which the Court later remitted to $500,000 in compensatory damages and $250,000 in punitive damages. *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2019 WL 1450449 (S.D.N.Y. Mar. 31, 2019). Before the Court is Ravina's motion for attorneys' fees and costs. For the reasons that follow, Ravina's motion is granted, subject to the modifications discussed below.

## BACKGROUND

Familiarity with the facts and procedural history of this case is assumed.  The Court here provides only a brief overview of what is relevant to the instant motion.  Ravina initiated this action against Columbia in March of 2016, alleging that Bekaert sexually harassed her and obstructed her research, and that Columbia failed to intervene in the harassment and denied her tenure in retaliation for her reporting of it.  She brought claims against Columbia for, *inter alia*, gender discrimination, quid pro quo sexual harassment, hostile work environment, and retaliation under the NYCHRL, Title VII of the Civil Rights Act of 1964, and Title IX of the Education Amendments of 1972.  In July of 2016, she filed a First Amended Complaint adding Bekaert as a defendant on her NYCHRL claims.

In February and March of 2018, Bekaert and Columbia moved for summary judgment. The Court denied Bekaert's motion in its entirety and granted Columbia's motion in part.  Dkts. 190, 235.  Specifically, the Court granted Columbia summary judgment on the federal quid pro quo sexual harassment claims, as well as on the federal and city law discrimination claims to the extent that those claims alleged direct discrimination on the part of Columbia.  The Court held that the hostile work environment and discrimination claims against Columbia could proceed to the extent that they were based on Columbia's improper handling of Bekaert's alleged discriminatory conduct, rather than on allegations of Columbia's direct discrimination.  The Court further denied Columbia's motion with respect to the retaliation claims.  Lastly, the Court ruled that Bekaert was not Ravina's supervisor, and accordingly rejected any theory of liability predicated on that argument.

The trial, which was bifurcated into a liability phase and a damages phase, took place in July of 2018.  Following the close of Defendants' case, Ravina voluntarily withdrew her remaining federal law claims against Columbia.  Tr. at 2530.  The jury was charged on five questions under

2

the NYCHRL: (1) whether Bekaert was liable for gender discrimination against Ravina, (2) if yes, whether Columbia was liable for Bekaert's gender discrimination against Ravina, (3) whether Bekaert was liable for retaliation against Ravina, (4) if so, Columbia was strictly liable for retaliation against Ravina based on Bekaert's conduct, and (5) whether Columbia was liable for retaliation against Ravina based on its own conduct.

After approximately two days of deliberations, the jury returned a verdict. Dkt. 242-6. It found that Bekaert was not liable under the NYCHRL for discriminating against Ravina, and therefore neither was Columbia. The jury, however, found that Bekaert was liable under the NYCHRL for retaliating against Ravina. Columbia was, therefore, also liable for retaliation based on Bekaert's conduct due to the NYCHRL's strict liability provision. *See* N.Y.C. Admin. Code § 8-107(13)(a) ("An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section."). Finally, the jury found that Columbia was not liable for retaliation based on its own conduct. The case then proceeded to the damages phase, at which both Ravina and Bekaert testified. After further deliberations, the jury returned a verdict awarding Ravina $750,000 in compensatory damages against Bekaert and Columbia, and $500,000 in punitive damages against Bekaert only.

After trial, Bekaert moved for judgment as a matter of law or, in the alternative, for a remittitur of the damages awards or a new trial on the issue of damages. Ravina moved for injunctive relief to bar Bekaert from engaging in further retaliatory acts. On March 31, 2019, the Court denied Bekaert's motion for judgment as a matter of law but granted his motion for a remittitur of the damages awards and denied Ravina's motion for injunctive relief. *Ravina*, 2019 WL 1450449. The Court remitted the damages award to $500,000 in compensatory damages and $250,000 in punitive damages. *Id.* The Court directed Ravina to inform the Court whether she

accepted the reduced damages awards or sought a new trial on the issue of damages. *Id.* On April 22, 2019, Ravina accepted the reduced damages awards. Dkt. 365.

On July 25, 2019, Ravina filed the motion for attorneys' fees and supporting declarations now before the Court. Dkt. 371-75. Ravina seeks $5,880,360.56 in attorneys' fees for the services of Sanford Heisler Sharp ("SHS"), $736,840.34 in costs, and $101,753.85 for her out-of-pocket legal costs for her prior counsel. On September 9, 2019, Columbia filed its memorandum of law in opposition to Ravina's motion and supporting declarations. Dkt. 380-82. Columbia proposes awarding SHS $973,342.68 in attorneys' fees and $39,533.03 in costs. That same day, Bekaert's attorney filed a declaration in opposition to Ravina's motion, stating that he joins in and adopts Columbia's opposition brief. Dkt. 379. On October 16, 2019, Ravina filed her reply. Dkt. 385-87. For the reasons that follow, the Court awards attorneys' fees in the amount of $1,336,861.63 and costs in the amount of $222,390.08 for a total award of $1,559,251.71.

## LEGAL STANDARD

The New York City Human Rights Law ("NYCHRL") provides for an award of reasonable attorneys' fees and costs to a prevailing plaintiff. *See* N.Y.C. Admin. Code § 8-502. "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (alteration omitted) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "A court may adjust the lodestar, in rare circumstances, when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Abdell v. City of New York*, No. 05-CV-8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015) (citation omitted). In determining the amount of the reasonable fee, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally

4

as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)). Ultimately, a "'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)).

"The party seeking fees bears 'the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Shabazz v. City of New York*, No. 14-CV-6417 (GHW), 2015 WL 7779267, at *2 (S.D.N.Y. Dec. 2, 2015) (quoting *Savoie v. Merch. Bank*, 166 F.3d 456, 463 (2d Cir. 1999)). "Requested fees must be supported with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done." *Abdell*, 2015 WL 898974, at *2 (quoting *Sprint Commc'ns Co. L.P. v. Chang*, No. 13-CV-3846 (RA), 2014 WL 6611484, at *6 (S.D.N.Y. Nov. 21, 2014)).

## DISCUSSION

"The question of whether a plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a threshold question that is separate from the question of the degree to which the plaintiff prevailed." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998). A plaintiff is considered a prevailing party if she "succeeded on any significant issue in the litigation, regardless of the magnitude of the relief obtained, if [s]he received actual relief on the merits of [her] claim that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* (internal citations, quotation marks, and alterations omitted). Ravina prevailed on her retaliation claim based on Bekaert's conduct and was awarded damages. She is therefore a prevailing party.

Although the parties agree that Ravina is entitled to attorneys' fees and costs, their initial lodestar calculations and their proposed adjustments to the lodestar are millions of dollars apart. Ravina argues that SHS committed over $8.5 million in lodestar to the case yet seeks a reduced fee award of approximately $5.9 million together with close to $740,000 in costs. Columbia, by contrast, argues that the total lodestar amount is approximately $2.7 million but that the Court should reduce the lodestar to under $1 million and less than $40,000 in costs to account for Ravina's lack of success on the majority of her claims, among other reasons.

### I.    Reasonableness of Counsel's Hourly Rates

The parties propose awarding vastly different hourly rates to Ravina's counsel. Ravina seeks hourly rates of $1,200 for SHS's Chairman David Sanford; $1,000 for Vice Chairman Jeremy Heisler; $950 for partner Vince McKnight; $850 for partners Alexandra Harwin, Andrew Melzer, Kate Kimpel, and Michael Palmer and senior litigation counsel Tom Henderson[1]; $750 for senior litigation counsel Melinda Koster, Amy Donehower, David Tracey, and Christine Dunn; $475 for associate Hannah Wolf; $450 for associate Nicole Wiitala and litigation fellow Joseph Kolker[2]; $425 for associates Jonathan Hiles and Ashlend Moss; $300 for summer associates Shengxi Li, Joseph Breen, and Corey Meyer; and $150 for fifteen different legal assistants. Dkt. 323-2. By contrast, Columbia proposes calculating the lodestar using hourly rates of $575 for partners, $375 for associates, and $150 for legal assistants. *See* Columbia's Br. at 16.

"In determining the reasonable hourly rate, 'courts must look to the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

---

[1] Ravina provides no explanation for why Tom Henderson should be awarded $100 more per hour than the other senior litigation counsel, nor does Ravina provide any information about Mr. Henderson's credentials to justify awarding him a higher rate.

[2] Ravina provides no justification for awarding Mr. Kolker a higher rate than Mr. Hiles even though they graduated from the same law school in the same year. *See* Stanford Decl. at ¶ 31-32, 35-36.

reputation.'" *Lilly v. City of New York*, No. 16-CV-322 (ER), 2017 WL 3493249, at *2 (S.D.N.Y.

Aug. 15, 2017) (quoting *Ognibene v. Parkes*, No. 08-CV-1335 (LTS), 2014 WL 3610947, at *2

(S.D.N.Y. July 22, 2014)). "The relevant community, in turn, is the district in which the court

sits." *Williams v. City of New York*, No. 16-CV-233 (JPO), 2017 WL 1906899, at *1 (S.D.N.Y.

May 9, 2017) (quoting *Mosher v. Davita Healthcare Partners Inc.*, No. 15-CV-7594 (JPO), 2016

WL 3963131, at *1 (S.D.N.Y. July 20, 2016)). "In evaluating the reasonableness of the hourly

rate, the Second Circuit has urged district courts to keep in mind the twelve *Johnson* factors." *Id.*

(citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182,

190 (2d Cir. 2008)). These factors, set forth in *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714,

717–19 (5th Cir. 1974), are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (quoting *Johnson*, 488 F.2d at 717–19).

"'[T]he most critical factor' in a district court's determination of what constitutes

reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also Indep. Project, Inc. v. Ventresca Bros.*

*Constr. Co.*, 397 F. Supp. 3d 482, 494 (S.D.N.Y. 2019) ("The 'results obtained' factor is the

weightiest."). "Both the quantity and quality of the relief obtained, as compared to what the

plaintiff sought to achieve as evidenced in [the] complaint, are key factors in determining the

degree of success achieved." *Barfield*, 537 F.3d at 152 (citation and quotation marks omitted).

Ravina succeeded on only one of the twenty-two counts in her First Amended Complaint—retaliation based on Bekaert's conduct in violation of the NYCHRL. Both Bekaert and Columbia were found liable for Bekaert's retaliatory conduct in light of the strict liability provision of the NYCHRL. *See* N.Y.C. Admin. Code § 8-107(13)(a). Ravina, however, lost the overwhelming majority of her claims, including her discrimination and sexual harassment claims against Bekaert and her claims that Columbia discriminated and retaliated against her through its own conduct. While Ravina did recover a substantial damages award of $500,000 in compensatory damages and $250,000 in punitive damages following the Court's remittitur, she had initially sought a significantly higher award in the range of $12.8 million to $17.8 million. Tr. 3225: 11-18. Accordingly, Ravina's relief—while significant—was just a fraction of what she initially sought. Ravina's limited relief therefore counsels in favor of a significant reduction in her proposed rates.

Columbia also argues that Ravina's proposed rates exceed the commonly accepted hourly rates for plaintiffs' counsel in comparable discrimination and retaliation cases in this district. Ravina's proposed rates—particularly those proposed for its more senior attorneys—are indeed significantly higher than those typically awarded in employment discrimination cases in this district. *See, e.g.*, *Lewis v. Amer. Sugar Ref., Inc.*, No. 14-CV-02302 (CRK), 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019) (Title VII, NYSHRL, and NYCHRL case awarding rates of $500 and $450 for partners, $300 for associate, and $125 for paralegal while observing that "[c]ourts in this district have approved hourly rates of $250 to $600 for civil rights attorneys with over ten years of experience and of $200 to $350 for associates"); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-CV-8414, 2017 WL 4103643 (S.D.N.Y. Sept. 7, 2017), *report and recommendation adopted*, No. 96-CV-8414 (KMW), 2017 WL 4082304 (S.D.N.Y. Sept. 8, 2017) (Title VII case approving $650 hourly rate for partner, $500 hourly rate for counsel and $175

hourly rate for paralegals); *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 519 (S.D.N.Y. 2015) (Title VII and NYCHRL case awarding $375 to firm's principal).

Ravina argues that it would be improper for this Court to rely only on the rates awarded to plaintiffs' attorneys in employment discrimination cases in this district.  Instead, Ravina urges the Court to evaluate the reasonableness of her proposed rates by looking to the rates awarded to commercial firms that regularly represent defendants—including Columbia's counsel, Proskauer Rose LLP ("Proskauer").  Ravina argues that SHS is more akin to a defense-side commercial law firm than a typical plaintiff-side employment firm in terms of the caliber and skill of its attorneys, its experience with complex litigation, its reputation, and its size.  *See Velez v. Novartis Pharm. Corp.*, No. 04-CV-09194 (CM), 2010 WL 4877852, at *22 (S.D.N.Y. Nov. 30, 2010) (finding SHS's "hourly rates are below the rates charged by firms of this caliber (principally defense firms) that litigate regularly in this district").  Courts in this district have found that hourly rates up to $1,260 are "not excessive in the New York City 'big firm' market." *Vista Outdoor Inc. v. Reeves Family Tr.*, 16 Civ. 5766, 2018 WL 3104631, at *6-7 (S.D.N.Y. May 24, 2018) (awarding rates up to $1,260 for partners, $693.75 for associates, and $200 for paralegals at a large commercial law firm).  Ravina further contends that its proposed rates are significantly lower than those Proskauer sought in its own publicly filed fee petitions in other actions, in which Proskauer sought rates ranging from $1,000 to $1,625 for partners, $975 for senior counsel, $595 to $950 for associates, and $225 to $460 for paralegals.  *See* Pl.'s Br. at 21 n.24 (listing Proskauer's rates in publicly filed fee petitions).  There is no record evidence, however, as to the rates Proskauer billed Columbia in this action.

The Court finds that the most appropriate comparators are the hourly rates awarded to other leading civil rights firms in this district.  SHS has a record of achieving significant victories in

complex litigation and has been recognized as a premier civil rights firm. *See* Sanford Decl. at ¶ 1-10 (discussing SHS's record of reaching multi-million-dollar settlements and the largest verdict ever awarded in an employment discrimination class action, as well as its receipt of various awards and accolades). It would therefore be unfair for this Court to rely only on the fees awarded to solo practitioners or practitioners from smaller, less well-known firms that commonly represent plaintiffs in employment discrimination actions in this district. Nonetheless, SHS is not akin to a commercial "big law" firm in terms of its fee model, clients, overhead, or substantive areas of practice. Therefore, the Court looks to rates awarded to other well-known and well-regarded civil rights firms.

In *Williams v. Metro-North Railroad Company*, for example, Magistrate Judge Parker awarded an $800 hourly rate to Kathleen Peratis and Patrick David Lopez, two experienced partners at the top employment law firm Outten & Golden. No. 1:17-CV-03847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018), *report and recommendation adopted*, No. 17 CIV. 3847 (JGK), 2018 WL 3368713 (S.D.N.Y. July 10, 2018). Judge Parker noted that both attorneys' impressive careers—Peratis was the former executive director of the Women's Rights Project at the American Civil Liberties Union, had drafted Supreme Court briefs, and had practiced for nearly 50 years, while Mr. Lopez was the former General Counsel of the EEOC, had served as a Senior Trial Attorney for the Civil Rights Division within the U.S. Department of Justice, and had practiced for 30 years. *Id* at *4. Judge Parker awarded a $425 hourly rate to a senior associate with eight years of experience, a $300 hourly rate to mid-level associates, and a $275 hourly rate to a junior associate. *Id.* at *4, *8. In *Powell v. Metro One Loss Prevention Services Group*, Magistrate Judge Freeman awarded a $650 hourly rate to Deborah Raskin, a named partner at the esteemed employment firm Vladeck Raskin and Clark, P.C., who had over 35 years of experience

in employment litigation and was the former President of the New York City Bar Association. No. 12-CV-4221 (LAP) (DF), 2015 WL 9287121, at *2-3 (S.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, No. 12-CV-4221 (LAP) (DF), 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015). Judge Freeman also awarded a $350 hourly rate to a senior associate with eight years of experience. *Id*. at *4. And in *Elkholy v. City of New York*, Magistrate Judge Netburn awarded a $650 hourly rate to Bob Herbst, whom she described as "a leading member of the New York City civil rights bar" who has "achieved excellent results for his clients" since he began his civil and constitutional rights practice in 1983. Transcript of Oral Argument on Fees at 4, No. 17-CV-2318 (AT) (SN) (S.D.N.Y. Aug. 6, 2019), *report and recommendation adopted*, No. 17-CV-2318 (AT) (SN), 2019 WL 4141866 (S.D.N.Y. Aug. 30, 2019). These fee awards to experienced and highly-regarded plaintiffs' attorneys are instructive and (even when adjusted for inflation) lead the Court to the conclusion that Ravina's counsel are not entitled to the substantially higher rates they propose.

The Court also considers the "novelty and difficulty of the questions" presented in this action. *Arbor Hill*, 522 F.3d at 186 n.3 (quoting *Johnson*, 488 F.2d at 717–19). The Court recognizes that the issues raised in this case—including sexual harassment, retaliation, gender bias in academia, and individual versus institutional liability—are exceedingly important to society at large. The Court nonetheless finds that the case "involved no complex issues of law or fact or novel evidentiary issues" that would have made the case unusually challenging to litigate for Ravina's attorneys. *Pinner v. Budget Mortg. Bankers, Ltd.*, 336 F. Supp. 2d 217, 220 (E.D.N.Y. 2004), *aff'd*, 169 F. App'x 599 (2d Cir. 2006). A higher fee award was justified in *Williams v. Metro-North Railroad Company*, by contrast, because the "case most certainly involved novel and evolving legal theories—the extent to which discrimination on the basis of being gender non-

conforming or transgender is covered by Title VII's prohibition on sex discrimination" at a time when very few courts had addressed the issue. 2018 WL 3370678, at *5.

The Court must also weigh the other *Johnson* factors in its analysis of a reasonable fee. *See Arbor Hill*, 522 F.3d at 186 n.3. In particular, the Court is mindful of the fact that this case took over three years to litigate. SHS invested significant labor and resources to survive Columbia and Bekaert's separate motions for summary judgment and litigate a fifteen-day jury trial. Further, the fact that SHS provided all of its services on a contingency fee basis counsels in favor of a larger fee award. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) ("The fact that counsel here worked on contingency clearly entitles them to some premium for the risk incurred"). Ravina contends that before she retained SHS, several firms declined to represent her while other firms were only willing to litigate on her behalf if she agreed to pay on an hourly basis. *See* Ravina Decl., Dkt. 374 ¶ 5; *R.G. v. Federated, Inc.*, No. 14-cv-7734, 2016 WL 3072396, at *3 (S.D.N.Y. May 27, 2016) (citing the fact that several attorneys previously passed on the case as reflective of the significant contingency risk). SHS should therefore be rewarded for undertaking the representation on a contingency basis, where other firms were unwilling to do so.

The Court must also consider Sanford Heisler's customary hourly rates. *LeBlanc-Sternberg*, 143 F.3d at 764. The Court rejects Columbia's argument that SHS has not provided sufficient evidence of its customary hourly rates in light of the fact that SHS's chairman attested in a sworn declaration that its proposed rates are consistent with its standard billing rates. *See* Sanford Decl. at ¶ 59. Ravina has also cited numerous cases in which courts have approved SHS's proposed rates—or similar rates, if adjusted for inflation. *See, e.g., Jane Doe 2 v. The Georgetown Synagogue et al.*, Civil Action No. 2014 CAB 8073 (D.C. Super. Ct. 2018) (approving SHS's proposed rates of $1,200 per hour for David Sanford, $850 for Alexandra Harwin and other

partners, and $425-$500 for associates and litigation fellows as "reasonable and in line with the rates that would be charged by attorneys with comparable skill, experience and reputation"); *Wellens et al. v. Daiichi Sankyo, Inc.*, No. 13-CV-581 (WHO), Dkt. 191 at 5 ¶ 20 (N.D. Cal. Feb. 10, 2016) (approving SHS's proposed rates of $850-$1,050 for partners, $700 for senior litigation counsel, and $425-$750 for associates, as "in line with attorneys of comparable skill, experience, and reputation"); *Velez*, 2010 WL 4877852, at *20, *22 (approving SHS's proposed rates—from nearly a decade ago—of $750 for David Sanford and another named partner, $600 to $700 for other partners and senior counsel, and $400 to $500 for associates).

Columbia also argues that Ravina's two attorneys who billed the highest number of hours—Alexandra Harwin and Melinda Koster—improperly billed based on their current billing rates even though Ms. Harwin was promoted to partner only six months before trial and Ms. Koster was promoted to senior litigation counsel nine months after trial had concluded. Columbia cites cases finding that reasonable hourly rates should be based on attorneys' "average of their level of experience over the course of the litigation." *United States ex rel. Bisk v. Westchester Med. Ctr.*, No. 06-CV-15296 (LAK) (FM), 2016 WL 8254797 at *5 (S.D.N.Y. Aug. 5, 2016) (quoting *Walker v. City of N.Y.*, No. 11-CV-314 (CBA), 2015 WL 4568305, at *7 (E.D.N.Y. July 28, 2015)); *see also New York State Nat'l Org. for Women v. Terry*, 94 F. Supp. 2d 465, 473 (S.D.N.Y. 2000). By contrast, Ravina argues that it is far more customary for courts in this district to calculate the lodestar using "current rather than historic hourly rates." *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 210 n.11 (2d Cir. 2005) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). "Because attorney's fees are often awarded long after services have been rendered, this rule was designed to compensate litigants for the delay in payment." *Id.* Indeed, the Second Circuit has remanded fee awards in employment discrimination suits where the district court failed to

award fees at current rates, because "compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed." *Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989)). The Court is therefore unpersuaded by Defendant's argument that it would be improper to calculate the lodestar using current hourly rates.

After considering the various *Johnson* factors—including the time and labor required, the novelty and difficulty of the questions, SHS's attorneys' customary rates, the fact that the fees were contingent, the amount involved in the case and the results obtained, the experience and ability of Ravina's attorneys, and awards in similar cases—the Court holds that Ravina's proposed rates are excessive, yet also finds Columbia's proposed rates for some of Ravina's attorneys unreasonably low. Accordingly, the Court applies an across-the-board thirty-five percent reduction to Ravina's proposed rates for all partners, senior litigation counsel, associates, fellows, and summer associates.

Finally, Columbia does not dispute Ravina's proposed hourly rate of $150 for legal assistants. The Court accepts this hourly rate as reasonable in light of the rates that courts in this district have recently approved in similar cases. *See, e.g. Lewis*, 2019 WL 116420 (Title VII and NYCHRL case approving $125 hourly rate for paralegals); *Gulino*, 2017 WL 4103643, *report and recommendation adopted*, 2017 WL 4082304 (Title VII case approving $175 hourly rate for paralegals); *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363 (S.D.N.Y. 2015) (Title VII and NYCHRL case approving $180 hourly rate for legal assistants).

## II.    Reasonableness of Hours Expended

Ravina seeks attorneys' fees for approximately 13,284 hours of work.[3]  "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  "Upon finding that counsel seeks compensation for excessive hours, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Charles v. City of New York*, No. 13-CV-3547 (PAE), 2014 WL 4384155 at *5 (S.D.N.Y. Sept. 4, 2014) (internal citation and quotation marks omitted).  In determining whether to exclude requested hours, the relevant issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  In this case, Columbia argues that Ravina's proposed hours are unreasonable for several reasons.  The Court will address each argument in turn.

### A. Excessive Hours and Inefficient Staffing

Columbia first argues that Ravina's counsel seeks fees for an excessive number of hours and staffed the case inefficiently.  Columbia argues, for example, that Ravina's counsel logged almost double the hours that Proskauer did: whereas Ravina seeks reimbursement for roughly 13,000 hours, Proskauer billed Columbia for 7,444.82 hours and Hernstadt Atlas LLP billed Bekaert for 1,138.2 hours. *See* Columbia Br. at 6.  Columbia also argues that SHS's partners with

---

[3] Ravina filed a chart that appears to indicate her counsel spent 13,284.2 hours on this case.  Dkt. 373-2.  When Columbia relied on the chart to assert that SHS seeks fees for 13,284.2 hours, Ravina responded that Columbia "substantially overstate[d]" the number of hours her counsel expended, and that SHS wrote off over 300 of its billed timekeepers' hours.  Pl.'s Reply, Dkt. 385; Harwin Decl., Dkt. 386.  Ravina, however, has not filed a revised chart and it is thus unclear how those 300 hours were distributed amongst Ravina's counsel.  Accordingly, the Court relies on the chart at Dkt. 373-2 as a reasonable approximation of the total number of hours each member of Ravina's legal team spent on the case.

higher billing rates took on a significant amount of work that could have been handled by more junior attorneys. The discrepancy in the number of partner hours billed by Ravina's and Defendants' counsel is indeed quite steep: SHS seeks reimbursement for 4,746.8 hours billed by partners, while Proskauer reportedly billed 1,399.58 partner hours and Hernstadt Atlas LLP reportedly billed 1,081.2 partner hours. *Id.* Columbia also takes issue with Ravina's request for reimbursement of 2,896.2 hours expended over the course of the trial, over twice the 1,376.3 hours that Proskauer billed Columbia. *Id.* at 9. Finally, Columbia argues that SHS overstaffed the case with legal assistants, including by having legal assistants attend depositions where two attorneys were present. Columbia therefore proposes calculating the lodestar amount using the total number of hours billed by Proskauer instead of relying on SHS's billed hours. *See James v. Nat'l R.R. Passenger Corp.*, No. 02-CV-3915 (RJH) (AJP), 2005 WL 6182322, at *14 (S.D.N.Y. Mar. 28, 2005) ("Although by no means a perfect proxy, the time billed by defendant's counsel is certainly a rough measure of what was 'reasonable' in this case, even taking into account that plaintiff had the ultimate burden of persuasion.").

The Court agrees with Columbia that the total number of hours for which Ravina seeks reimbursement is excessive and that SHS overstaffed the case. This overstaffing was particularly evident at trial, at which four partners—Alexandra Harwin, Andrew Melzer, David Sanford, and H. Vince McKnight—all participated at trial. *See* Dkt. 373-1. In addition, senior litigation counsel Melinda Koster and Amy Donehower as well as associates Hannah Wolf and Jonathan Hiles, provided assistance throughout trial. *Id.* The participation of four partners at trial was duplicative—particularly in light of the fact that Mr. McKnight billed for his time spent traveling back to Washington, D.C. *Id.* at 153. On the first day of trial alone, the four partners billed a collective 68 hours and senior litigation counsel billed a collective 36.3 hours. *Id.* at 140 (Harwin

billed 19 hours, Sanford billed 15 hours, Meltzer billed 18 hours, McKnight billed 16 hours, Koster billed 18.2 hours, and Donehower billed 18.3 hours). Courts in this district have reduced fee awards where more than one partner participated at trial, indicating a duplication of effort. *See, e.g.*, *Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 511 (S.D.N.Y. 2007). The Court finds that the participation of this many high-billing attorneys was indeed inefficient and in no way integral to Ravina's success on her retaliation claim. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (reducing attorneys' fees by 15% in part because of the disproportionate amount of time billed by more senior counsel).

In addition, while it is admirable that the firm wanted to provide opportunities for junior attorneys and legal assistants to attend client meetings, mediation, depositions, court proceedings, and trial, it is unreasonable for Ravina to recover fees for meetings or proceedings attended by three or more legal professionals when those meetings or proceedings could easily have been handled by one or two. For example, on May 18, 2017, David Sanford, Alexandra Harwin, Melinda Koster, and two legal assistants all billed for attending Bekaert's deposition. Dkt. 373-1 at 50-51. On May 23, 2017, David Sanford, Alexandra Harwin, Melinda Koster, a summer associate, and a legal assistant all billed for attending the deposition of Glenn Hubbard, the Dean of Columbia Business School. *Id.* at 51-52. On July 14, 2017, Alexandra Harwin, David Sanford, and a summer associate all billed for attending a post-discovery status conference before the Court. *Id.* at 62. On August 21, 2017, Alexandra Harwin, Melinda Koster, and a legal assistant all billed for a call with an expert. *Id* at 68. On April 17, 2019, Alexandra Harwin, Melinda Koster, and a legal assistant all billed for a call with the Court. *Id.* at 107-08. On June 6, 2018, Alexandra Harwin, Melinda Koster, David Sanford, Amy Donehower, and a legal assistant all attended a "jury research event." *Id.* at 121-22. On July 3, 2018, Alexandra Harwin, Amy Donehower, and

17

a legal assistant all billed for a client meeting. These examples all reflect that SHS staffed an unnecessary number of legal professionals on given assignments. While the Court applauds SHS's apparent efforts to ensure that more junior lawyers and other staff members gain exposure to all aspects of litigation, it is unfair for Defendants to have to pay for SHS's junior team members' learning and development. *See, e.g., Munoz v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-CV-7037 (JPO), 2014 WL 4652481, at *5 (S.D.N.Y. Sept. 18, 2014) (reducing fee award for time "passively attending depositions and preparing exhibits"), *aff'd*, 607 F. App'x 85 (2d Cir. 2015); *Lavin-McEleney v. Marist Coll.*, No. 96-CV-4081, 1999 WL 33500070, at *4 (S.D.N.Y. Sept. 28, 1999) (reducing fee award "as the presence of a paralegal at jury selection was unnecessary"), *aff'd*, 239 F.3d 476 (2d Cir. 2001).

Although the Court finds Ravina's hours excessive and its staffing duplicative, it does not view the hours billed by Proskauer alone to be an appropriate proxy. Ravina rightly points out that the number of hours that Proskauer billed does not account for the time that Columbia's in-house counsel or Bekaert's counsel spent working on the case. *See* Dkt. 386 ¶ 5; Dkt. 387 ¶ 4. Bekaert's counsel questioned Ravina separately at deposition and trial, served separate discovery requests, and submitted his own motion for summary judgment, motions *in limine*, and post-trial motion. Ravina's counsel therefore had to expend additional hours responding to Bekaert's counsel's separate discovery requests, briefing, and questioning at trial. Proskauer had no comparable duty to respond to two parties with separate counsel. Further, there is no record evidence regarding how many hours Columbia's in-house counsel spent on the case. Accordingly, instead of substituting Proskauer's hours for SHS's hours, the Court will reduce the number of billed hours by thirty-five percent. This reduction—from approximately 13,284.5 hours to 8,634.925 hours—

is significantly closer to the sum of the 7,444.82 hours expended by Columbia's counsel and the 1,138.2 hours expended by Bekaert's counsel.

## B. Allegedly Vague Time Entries and Block Billing

Columbia next argues that Ravina's proposed hours must be further reduced because SHS's records include vague or block billed entries. A motion for attorneys' fees must be "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Leevson v. Aqualife USA Inc*, 770 F. App'x 577, 583 (2d Cir. 2019) (citing *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)). "Courts may deny compensation where the billing information submitted is 'too vague to sufficiently document the hours claimed.'" *Tatum v. City of New York*, No. 06-CV-4290 (PGG) (GWG), 2010 WL 334975, at *7 (S.D.N.Y. Jan. 28, 2010) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)).

Courts in this district have reduced the number of compensable hours when the time records fail to establish with sufficient particularly the nature of the work performed. *See, e.g.*, *Kirsch*, 148 F.3d at 172–73 (determining that a district court was within its discretion to reduce a fee award by 20 percent on the grounds that a number of the attorneys' time entries, including "letter to court," "staff conference," or "work on motion," were "too vague to sufficiently document the hours claimed"); *Kerr v. John Thomas Fin.*, No. 14-CV-9168 (KBF), 2017 WL 1609224, at *2 (S.D.N.Y. May 1, 2017) (adopting a magistrate judge's determination that "plaintiff's counsel's time entries for activities such as 'calls,' 'filing,' and 'research, prep work' were sufficiently vague to justify a reduction in fees" (alteration omitted)); *Tucker v. City of New York*, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (explaining that the requirement that a party requesting fees "identify the general subject matter" is "generally not satisfied by vague entries such as 'conference with' or 'call to' a specified person, although the court may be able to deduce

the nature and relevance of a generally described time entry based on its familiarity with the case or other contextual clues" (citations omitted)); *Williamsburg Fair Hous. Comm. v. N.Y.C. Hous. Auth.*, No. 76-CV-2125 (RWS), 2005 WL 736146, at *10 (S.D.N.Y. Mar. 31, 2005) (reducing a fee award after concluding that many time entries—such as "telephone conference," "conf. w AL," "mtg w/ GC" and "research"—"fail to indicate the subject matter of telephone calls, conferences, and documents reviewed and drafted, or otherwise provide context by referring to specific issues or events in the case").

Ravina submitted 175 pages of time records in support of her motion for attorneys' fees. Dkt. 373-1. While the majority of the time entries are appropriately detailed, a number of them are impermissibly vague. For example, many of David Sanford's time entries refer to meetings or discussions without identifying the topic discussed. *See, e.g.*, *id.* at 1, (9/15/2015: "Discuss case with K. Kimpel"); *id.* (9/25/2015: "consult with K. Kimpel regarding case"); *id.* at 6 (3/2/2016: "Strategize with A. Harwin re case"); *id.* at 9 (3/24/2016: "consult with M. Palmer regarding case strategy"); *id.* at 39 (3/15/2017: "Conduct call with client and A. Harwin"); *id.* at 40 (3/23/2017: "Consult with A. Harwin concerning status of case"); *id.* at 114 (5/16/2018: "confer re case with V. McKnight"). Many of Alexandra Harwin's time entries similarly lack a description of the subject matter discussed in a given meeting or in correspondence. *See, e.g.*, *id.* at 1 (9/17/15: "Consult with K. Kimpel regarding case; review correspondence from K. Kimpel"); *id.* at 2 (1/7/2016: "Review correspondence from K. Kimpel; correspond with N. Messing"); *id.* at 5 (2/11/2016: "Correspond with K. Kimpel; consult with M. Wong); *id.* at 6 (2/21/2016: "Correspond with K. Kimpel"; 3/2/2016: "Consult with D. Sanford regarding case; correspond with client"); *id.* at 29 (11/2/2016 and 11/4/2016: "Review correspondence from J. Kolker"); *id.* at 31 (11/17/2016: "Correspond with R. Fischer"). Alexandra Harwin's entries also frequently

include the vague phrase, "perform legal research," without specifying the topic of research. *See, e.g.*, *id.* at 2 (1/13/2016 entry); *id.* at 6 (3/7/2016 entry); *id.* at 7 (3/14/2016 entry and 3/15/2016 entry); *id.* at 9 (3/27/2016 entry); *id.* at 52 (5/26/2017 entry).

Although Ravina contends that "any entries that might be considered vague are few in number and certainly do not detract from the Court's ability to evaluate the reasonableness of time expended by Ravina's attorneys on each task," the Court finds the entries cited above, among others, too vague to allow it to determine with sufficient particularly the nature of the work SHS performed. *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 207 (N.D.N.Y. 2019). Because the majority of the entries were appropriately detailed, however, the Court finds that only a modest reduction of compensable hours by five percent is appropriate on this basis.

### C. Ravina's Unsuccessful Claims

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude . . . hours dedicated to severable unsuccessful claims." *Quaratino*, 166 F.3d at 425. As described above, Ravina succeeded on only one out of the twenty-two counts in her First Amended Complaint: her claim that Bekaert retaliated against her in violation of the NYCHRL. The crux of Ravina's successful claim was that Bekaert retaliated against her by obstructing and delaying her research and by sending disparaging emails about her to colleagues in their field. In light of the NYCHRL's provision that employers "shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section," N.Y.C. Admin. Code § 8-107(13)(a), the jury found both Columbia and Bekaert liable for Bekaert's retaliatory conduct. The jury, however, found that Columbia was not liable for retaliation based on its own conduct. Ravina also lost her gender discrimination claims based on Columbia's direct conduct at the summary judgment phase, withdrew her remaining federal claims against both Bekaert and Columbia before the jury was

charged, and lost her NYCHRL gender discrimination claims—including her sexual harassment claims—based on Bekaert's conduct at trial.

Although Ravina succeeded only on her retaliation claim based on Bekaert's conduct, her partial success is not necessarily fatal to her recovery on all claims:

> When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded. No fees should be awarded for time spent pursuing a failed claim if it was "unrelated" to the plaintiff's successful claims in the sense that it was "based on different facts and legal theories." On the other hand, if the plaintiff won substantial relief, and all of his claims for relief "involve[d] a common core of facts" or were "based on related legal theories," so that "[m]uch of counsel's time w[as] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," there should be a fee award for all time reasonably expended.

*LeBlanc-Sternberg*, 143 F.3d at 762 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)) (internal citations omitted). The degree to which Ravina can recover fees on her successful retaliation claim based on Bekaert's conduct therefore depends on the degree to which that claim is "intertwined" with her unsuccessful claims, specifically her retaliation claim based on Columbia's direct conduct and her gender discrimination claims against both Bekaert and Columbia.

Ravina argues that it is misleading to reduce her victory to a success on one out of twenty-two counts. She contends that the verdict reflects her success on *half* of her substantive claims— i.e. she prevailed on retaliation but lost on discrimination—against *both* Defendants for the maximum damages the Court found to be available under the NYCHRL in its opinion on remittitur. *See Ravina*, 2019 WL 1450449, at *13. She also argues that her decision to withdraw her Title VII and Title IX claims does not reflect limited success because a verdict on the federal statutes would not have increased the recoverable damages.

Columbia, by contrast, paints Ravina's success as substantially more limited and urges the Court to drastically reduce Ravina's fee award.  In particular, Columbia asserts that a significant portion of fact discovery, expert discovery, briefing, and trial was focused on Ravina's argument that Columbia improperly handled her tenure process.  Columbia argues that Ravina was denied relief on all claims related to the tenure process at summary judgment and when Columbia was not found liable for discrimination or retaliation based on its own conduct.  Columbia therefore proposes reducing Ravina's lodestar by 35% to account for her lack of success on her "tenure claims."  Columbia provides no rationale for how it reached the 35% reduction.  Columbia also argues that a significant portion of the litigation was focused on Ravina's failed sexual harassment claims.  Columbia argues that these claims were not "inextricably intertwined" with her successful retaliation claim based on Bekaert's conduct.   Yet Ravina rightly points out that the position Columbia now takes is directly in conflict with the position it took during trial when it stated in a letter to the Court that "Plaintiff's retaliation allegations concerning Professor Bekaert are inextricably intertwined and are part and parcel of her hostile work environment claim." Dkt. 232 at 3.  Columbia never accounts for this change in position.  Nonetheless, it proposes an additional 35% reduction to Ravina's lodestar to account for Ravina's lack of success on her sexual harassment claims.  While Columbia again provides no justification for the amount of its proposed reduction, the combined effect of two proposed 35% reductions to Ravina's lodestar would be a 57.75% reduction.

Although it is true that Ravina only prevailed on her retaliation claim based on Bekaert's conduct, some of her failed claims did involve "a common core of facts" and were thus "inextricably intertwined" with the successful retaliation claim. *Quaratino*, 166 F.3d at 425.  As the Second Circuit and the Supreme Court have noted, "in many civil rights cases the plaintiff's

claims for relief will involve a common core of facts or will be based on related legal theories, making it difficult to divide the hours expended on a claim-by-claim basis." *Konits v. Karahalis*, 409 F. App'x 418, 421 (2d Cir. 2011) (quoting *Hensley*, 461 U.S. at 435) (alterations and internal quotation marks omitted). Indeed, "[s]uch a lawsuit cannot be viewed as a series of discrete claims," and instead, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Id.*

Ravina's failed claims that Columbia discriminated and retaliated against her based on its own conduct were only marginally related to her successful retaliation claim based on Bekaert's conduct. For example, Ravina unsuccessfully sought discovery on and pushed a theory that Columbia accelerated her tenure vote in direct retaliation for her decision to sue Columbia. *See* Pl.'s Opp'n. to Columbia's Summ. J. at 25-26. At the outset of the case, Ravina also unsuccessfully argued that she would suffer irreparable harm if Columbia made a decision on her tenure candidacy instead of granting her a delay. The Court rejected this argument and denied Ravina's motion for a temporary restraining order and preliminary injunction. Dkt. 25. It later granted Columbia's summary judgment motion on this theory, concluding that there was no disputed material issue of fact as to whether Ravina's tenure denial occurred under circumstances giving rise to an inference of discrimination on Columbia's part. Dkt. 235. These failed legal theories, and the evidence Ravina sought to introduce in support thereof, have little in common with her claim that Bekaert retaliated against her.

By contrast, Ravina's successful retaliation claim based on Bekaert's conduct was inextricably intertwined with her failed discrimination claims based on Bekaert's conduct— including her failed sexual harassment claims. "[W]hen a plaintiff fails to prove one of two overlapping claims—e.g. a discriminat[ion claim]—but prevails on the other—e.g. retaliation for

complaining of discrimination—the plaintiff may recover fees for all the legal work." *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90-91 (2d Cir. 2004); *see also Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1259–60 (2d Cir. 1987); *Insinga*, 478 F. Supp. 2d at 512. Ravina's complaints that Bekaert subjected her to harassment were the but-for cause of many of Bekaert's disparaging emails to colleagues in their field. Indeed, some of the emails focused specifically on the allegations of sexual harassment. In one email that Bekaert sent on July 12, 2014 to his girlfriend, an economist at the European Central Bank, he wrote, "I am dealing with this harassment case. It is so insane. If this is harassment, the Americans really are total pussies." Tr. 1588-89; Pl's. Ex. 46. After Ravina filed the instant lawsuit, prompting articles in the New York Times and other outlets about the allegations of harassment, Bekaert sent a slew of emails to colleagues in which he variously referred to Ravina as an "evil bitch," "very crazy and sick," "abusive," "very evil and crazy," a "schizophrenic woman," "super aggressive and crazy," and "mentally unstable and vicious." Pl's. Exs. 137, 140–41, 143-45, 149–53, 162, 165–67. Much of the proof supporting Ravina's successful retaliation claim was thus inextricably intertwined with the proof regarding Bekaert's alleged (albeit ultimately unproven) harassment of her. *See Echevarria*, 102 F. Supp. 3d at 520 (denying request to reduce attorneys' fees "to reflect the fact that Plaintiff did not succeed on her sexual harassment claims" because "[t]he Court finds that Plaintiff's harassment and retaliation claims were inextricably intertwined").

Ravina's successful retaliation claim was also inextricably intertwined with her failed discrimination claims because there is significant overlap between the elements necessary to prove discrimination and retaliation under the NYCHRL. To prove the former claim, Ravina had to establish that Bekaert treated her "less well" at least in part because of her gender, while to prove the latter claim, she had to establish that she suffered one or more actions by Bekaert that were

reasonably likely to deter a person from pursuing a claim of discrimination. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110-12 (2d Cir. 2013). Ravina relied, in part, on identical evidence and advanced similar arguments about Bekaert's attempts to undermine and disparage her in support of both claims. For example, Ravina's counsel repeatedly referred to the emails in which Bekaert referred to Ravina as a "bitch" in his closing statement while discussing *both* Ravina's discrimination and retaliation claims. *See* Tr. 2677: 7-14 (discussing the disparaging emails in the context of the discrimination claims); Tr. 2711: 2-10 (discussing the same emails in the context of the retaliation claims). Columbia effectively conceded this overlap when it wrote in a July 22, 2018 letter to the Court, "The only alleged facts purportedly supporting Plaintiff's NYCHRL claim of retaliatory conduct by Professor Bekaert are intertwined with the underlying hostile work environment allegations and cannot be divorced from the facts forming the basis of that claim." Dkt. 232 at 2.

The Court thus concludes that an additional reduction in the number of hours expended is warranted in light of the fact that some of Ravina's failed discrimination and retaliation claims were not intertwined with her successful retaliation claim based on Bekaert's conduct. Columbia, however, understates the degree to which Ravina's failed claims were intertwined with her successful claim and its proposed reduction of 57.75% is too extreme. Instead, the Court will reduce Ravina's hours by thirty-five percent.

In sum, the Court reduced Ravina's hours by seventy-five percent total: thirty-five percent to account for the excessive hours expended and inefficient staffing, five percent to account for the vague time entries and block billing, and thirty-five percent to account for Ravina's lack of success on her claims based on Columbia's conduct.

### III.   Costs

In addition to attorneys' fees, Ravina seeks reimbursement for costs.  Once again, the parties are far apart in their estimations of reasonable reimbursement.  Ravina contends it incurred $866,870.99 in expenses yet seeks a reduced award of $736,840.34 in costs.  Columbia argues that Ravina should only be reimbursed significantly less, $39,533.03 in expenses.

#### A.  Costs Related to Ravina's Experts

Ravina seeks reimbursement for costs related to two experts, Professor Deborah Rhode and Dr. Caren Goldberg.  Ravina claims she retained Professor Rhode to consult on gender bias in academic settings and Dr. Goldberg to consult on the norms governing employer policies and practices on discrimination and retaliation, and to evaluate those policies and practices at Columbia.  SHS alleges it incurred $95,316.83 in costs for Professor Rhode, including fees for approximately 100 hours at a rate of $950 per hour, and $116,291.81 in costs for Dr. Goldberg, including fees for approximately 215 hours at a rate of $525 per hour.  Neither Professor Rhode nor Dr. Goldberg testified at trial.

Columbia argues that Ravina should not be reimbursed for costs related to her retention of either expert.  Columbia contends that costs associated with Professor Rhode are not compensable because the Court precluded Professor Rhode from testifying.  Tr. 428:12-430:7 ("Professor Rhode's expert testimony would not aid this jury.  The pressures and responses plaintiff has described in this case are matters of common sense and fully within the jury's ability to understand and evaluate, so Columbia's motion to exclude Professor Rhode's testimony is therefore granted.").  Columbia also asserts that Professor Rhode's testimony principally focused on gender bias in academia—including in tenure decisions—and is therefore not compensable because, as explained above, Ravina did not prevail on her discrimination or retaliation claims based on Columbia's own actions during the tenure process.  *See supra* Section II.C.  Similarly, Columbia

argues that Ravina's costs associated with Dr. Goldberg are not compensable because Ravina withdrew Dr. Goldberg as an expert. Tr. 7:20-23. Columbia also contends that Dr. Goldberg's testimony was principally focused on Ravina's failed legal claim that Columbia discriminated against Ravina by negligently responding to Bekaert's alleged harassment.

Ravina argues that she is entitled to reimbursement of expert fees because Professor Rhode and Dr. Goldberg provided crucial assistance identifying and developing the themes and evidence that SHS focused on in briefing and at trial. She contends that their support was integral to her success on her retaliation claim, which she again argues is inextricably intertwined with her failed claims. Columbia rightly points out that neither Professor Rhode nor Dr. Goldberg billed any time in the month preceding trial or during the trial itself. Yet Ravina asserts that Dr. Goldberg's support was so effective that SHS determined it would not be necessary for her to testify. Similarly, Ravina claims that Professor Rhode helped her to develop testimony on gender bias in academia that was so compelling that the Court found Professor Rhode's testimony was unnecessary.

The Court agrees with Columbia that Ravina's expenditure of more than $211,000 on experts was excessive. The Court in no way questions Professor Rhode or Dr. Goldberg's qualifications or expertise. Yet the Court finds that the majority of the work performed by the experts was unnecessary and did not contribute meaningfully to Ravina's success on her single retaliation claim, particularly in light of the fact that neither expert testified at trial. Additionally, SHS holds itself out as a leading plaintiffs-side employment firm and should thus possess adequate knowledge of the "norms governing employer policies, practices, and procedures concerning discrimination and retaliation" without the need to consult Dr. Goldberg. Sanford Decl. ¶ 70. Similarly, the Court reaffirms its decision that the expert testimony SHS sought to offer from

Professor Rhode was duplicative of that already offered by Ravina herself. Tr. 428:13-16 ("The jury does not need an expert witness to tell them what they have already been told but in vaguer terms and divorced from the specific facts of the case.").

The Court nonetheless rejects Columbia's argument that Ravina is not entitled to *any* reimbursement of expert fees simply because her experts did not testify at trial. *See Themis Capital v. Democratic Republic of Congo,* No. 09 Civ. 1652, 2014 WL 4379100, at *9 (S.D.N.Y. Sept. 4, 2014) ("[C]ourts in this District routinely reimburse prevailing parties for the costs of expert witnesses and consultants, regardless [of] whether the expert testified at trial."). The Court credits SHS's claim that its consultation with Professor Rhode and Dr. Goldberg was helpful in shaping themes for trial, although the Court disputes the degree to which their assistance was necessary, particularly in light of SHS's substantive expertise on sexual harassment and retaliation. Accordingly, the Court finds that Ravina is entitled to reimbursement of $50,000 in expert-related fees. *See United States v. City of New York,* No. 07-CV-2067 (NGG) (RLM), 2014 WL 347605, at *2 (E.D.N.Y. Jan. 30, 2014) (holding that plaintiffs were not entitled to an award of fees for their damages expert because they did not prevail on the issue for which they sought his testimony, and the court otherwise had excluded the testimony of that expert).

### B. DOAR's Trial Support Services

Ravina next seeks reimbursement for $355,984.71 spent on trial consulting and support services provided by DOAR, Inc. Ravina claims that DOAR staged a jury focus group prior to trial, helped to select the jury and provide guidance based on juror observations, assisted with the visual display of evidence, and developed and presented trial graphics. Dkt. 375.

Columbia argues these costs are excessive, and the Court agrees. Courts within the Second Circuit have denied comparably high requests for reimbursement of trial support services. *See, e.g., Endo Pharm. Inc. v. Amneal Pharm., LLC,* No. 12-CV-8115 (JPO), 2019 WL 2417386, at *5

(S.D.N.Y. June 10, 2019) ("[E]ven though a prevailing party's decision to fork out hundreds of thousands of dollars to consultants to develop a compelling visual trial narrative through the creation of purpose-made illustrations and animations will obviously help that party to present its case effectively, it does not follow that the losing party should bear such costs as a matter of course."); *Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2160017, at *15 (E.D.N.Y. May 26, 2010) (expenditure of $96,209.52 on DOAR services such as jury focus group was unnecessary and non-compensable because it "would be unreasonable to hold [defendant] accountable for such premium services, which far exceed the standard litigation expenses of the average reasonable litigant").

The Court also notes that some courts in this district have held that "DOAR's litigation consulting services fall properly under the rubric of attorneys' fees" rather than the rubric of costs. *BD v. DeBuono*, 177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001); *see also Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 (RJS), 2016 WL 817449, at *6 (S.D.N.Y. Feb. 24, 2016) (finding DOAR trial consultants "appear to have acted as additional legal support staff"), *aff'd in part, vacated in part, remanded sub nom. Broadspring, Inc. v. Nashed*, 683 F. App'x 13 (2d Cir. 2017). A reduction in Ravina's recovery for costs associated with DOAR's trial support is thus also appropriate for the same reasons the Court reduced Ravina's attorneys' fee award. Ravina already had an excessive number of legal professionals from SHS staffing her trial. It was therefore unreasonable for her to bill for trial support from *even more* legal professionals from outside SHS.

Although the Court finds Ravina request for hundreds of thousands of dollars in trial support services fees excessive, it disagrees with Defendant's assertion that Ravina is not entitled to any reimbursement for DOAR's work. "Computers, computer graphics, digitized documents, and other technological advancements have become important tools of the modern-day trial

lawyer. As long as the cost is reasonable and the devices aid in the efficient and effective presentation of evidence, a prevailing party should be allowed to recover their expense." *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005). Accordingly, the Court holds that Ravina is entitled to reimbursement for $100,000 in trial support services.

### C. Incidental Costs Associated With Travel, Meals, and Lodging

Ravina seeks reimbursement of $112,139.06 in incidental expenses related to travel, meals, and lodging. Included in this figure is reimbursement of $91,963.01 for charges at a Manhattan hotel for "members of the trial team who resided outside of Manhattan." The Court finds this request particularly excessive in light of the fact that SHS is based in Manhattan and Ravina's counsel thus presumably commutes to Manhattan on a daily basis. Ravina cites no cases in which courts have awarded hotel fees to counsel at a law firm that is based in the very city where trial took place.

The Second Circuit has held that "Defendants should not be burdened with the costs of funding out-of-district counsel unless the case requires specialized expertise beyond the competence of local counsel." *Pasini v. Godiva Choclatier, Inc.*, 764 F. App'x 94, 96 (2d Cir. 2019) (affirming district court's denial of lead counsel's travel costs); *see also Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312 (3d Cir. 2008) ("[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel.") (internal quotation marks omitted). This reasoning applies with equal—if not greater—force to the travel and lodging costs of counsel who live *within* commuting distance of the district.

Some courts within this district have found that reasonable costs for meals are reimbursable "so long as the costs are not typically absorbed within the attorney's hourly rates." *Id.* Other courts have held that meals are not reimbursable unless they are necessary due to out-of-town

31

travel. *See Tatum v. City of New York*, No. 06-CV-4290 (PGG) (GWG), 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010); *Lucky Brand Dungarees, Inc. v. Ally Apparel Res.*, LLC, No. 05-CV-6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009); *Rozell v. Ross–Hoist*, 576 F. Supp. 2d 527, 547 (S.D.N.Y. 2008). Ravina seeks reimbursement for expensive meals leading up to and during trial, including ten meals over $200, two meals over $300, and one meal that was nearly $800. *See* Dkt. 373-3. Without documentation as to how many people these meal costs covered, they appear excessive.

In short, the Court concludes that the vast majority of Ravina's expenditures on travel, lodging, and meals were excessive. The Court will grant only $5,000 in reimbursement for these costs.

### D. Additional Costs

Columbia does not dispute certain categories of Ravina's costs, including costs related to depositions transcription services ($69,555.70), discovery and document storage ($64,525.10), two mediation sessions ($16,761.19), and court filing fees ($36,296.59). The Court finds that these costs are reasonable and must be reimbursed, subject to the reductions set forth below.

### E. Ravina's Failure to Submit Invoices

Columbia argues Ravina's award should be reduced by 50% because SHS failed to submit original invoices or receipts for the costs it seeks to recoup other than the invoice for DOAR's trial consulting. The Court declines to do so. SHS filed a declaration signed by Mr. Sanford under penalty of perjury attesting to the costs incurred, and attached a thirteen-page spreadsheet listing the date, vendor, description, and amount of each cost incurred. "A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is ordinarily . . . sufficient." *Hernandez v. JRPAC Inc.*, No. 14 CIV. 4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017). Mr. Sanford's declaration is sufficient here.

### F. Ravina's Unsuccessful Claims

Columbia again argues that Ravina's award should be reduced to account for her lack of success on her gender discrimination claims and her retaliation claim based on Columbia's direct conduct. "The same doctrine that requires a reduction in fees due to lack of success applies equally to costs." *Salustio v. 106 Columbia Deli Corp.*, No. 15-CV-6857 (GWG), 2017 WL 5714089, at *3 (S.D.N.Y. Nov. 27, 2017); *see also Humane Soc. of U.S. v. HVFG, LLC*, No. 06-CV-6829 (HB), 2010 WL 3322512, at *9 (S.D.N.Y. Aug. 19, 2010). Accordingly, the Court will reduce reimbursement of all of Ravina's costs by thirty-five percent for the same reasons it reduced Ravina's fee award. *See supra* Section II.C.

### IV.   Reimbursement for Ravina's Prior Counsel

Ravina's request for reimbursement of $101,753.85 in legal fees and costs she paid to her prior counsel is denied. Prior counsel was involved only in pre-litigation matters, including failed attempts at settlement, and never appeared before this Court. Ravina's prior counsel therefore did not contribute meaningfully to Ravina's success on the merits of her retaliation claim. Moreover, Ravina has not met her burden of establishing the reasonableness of her prior counsel's hourly rates or the reasonableness of the hours her prior counsel expended. Ravina merely asserts that the fees she paid were *per se* reasonable because she was a junior, non-tenured professor who feared losing her job. Ravina therefore fails to adequately support her request for reimbursement for the fees and costs she paid to her prior counsel.

### V.   Sealing Request

Finally, the Court denies as moot Ravina's letter motion to seal excerpts from deposition transcripts that Columbia had previously designated as confidential. Dkt. 388. Ravina stated she was making the sealing request "in an abundance of caution to provide Columbia with the opportunity to advise the Court as to whether it intends to seek any redactions." Columbia has not

33

sought any redactions in the months since Ravina filed her letter.  Therefore, Ravina shall file the exhibits on the docket in unredacted form no later than April 1, 2020.

## CONCLUSION

For the foregoing reasons, the Court grants Ravina's motion for attorneys' fees and costs, subject to the modifications discussed above.  Ravina is awarded attorneys' fees in the amount of $1,336,861.63 and costs in the amount of $222,390.08 for a total award of $1,559,251.71.

| | Title | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Alexandra Harwin | Partner | $552.50 | 616.45 | $340,588.63 |
| Andrew Melzer | Partner | $552.50 | 262.55 | $145,058.88 |
| David Sanford | Chairman / Partner | $780.00 | 144.275 | $112,534.50 |
| Vince McKnight | Partner | $617.50 | 121.2 | $74,841.00 |
| Kate Kimpel | Partner | $552.50 | 23.05 | $12,735.13 |
| Michael Palmer | Partner | $552.50 | 13.575 | $7,500.19 |
| Jeremy Heisler | Vice Chairman / Partner | $650.00 | 5.6 | $3,640.00 |
| Melinda Koster | Senior Litigation Counsel | $487.50 | 659.725 | $321,615.94 |
| Amy Donehower | Senior Litigation Counsel | $487.50 | 115.075 | $56,099.06 |
| David Tracey | Senior Litigation Counsel | $487.50 | 24.675 | $12,029.06 |
| Christine Dunn | Senior Litigation Counsel | $487.50 | 22.4 | $10,920.00 |
| Tom Henderson | Senior Litigation Counsel | $552.50 | 4.275 | $2,361.94 |
| Hannah Wolf | Associate | $308.75 | 75.325 | $23,256.59 |
| Jonathan Hiles | Associate | $276.25 | 46.7 | $12,900.88 |
| Nicole Wiitala | Associate | $292.50 | 8.85 | $2,588.63 |
| Ashlend Moss | Associate | $276.25 | 7.675 | $2,120.22 |
| Joseph Kolker | Litigation Fellow | $292.50 | 130.5 | $38,171.25 |
| Shengxi Li | Summer Associate | $195.00 | 20.6 | $4,017.00 |
| Joseph Breen | Summer Associate | $195.00 | 20.425 | $3,982.88 |
| Corey Meyer | Summer Associate | $195.00 | 3.775 | $736.13 |
| Melody Wong | Legal Assistant | $150.00 | 226.425 | $33,963.75 |
| Maya Inamura | Legal Assistant | $150.00 | 95.95 | $14,392.50 |
| Talia Stender | Legal Assistant | $150.00 | 72.725 | $10,908.75 |
| Kristen Campbell | Legal Assistant | $150.00 | 13.875 | $2,081.25 |
| Nathan Cummings | Legal Assistant | $150.00 | 12.225 | $1,833.75 |
| Mariel Brunman | Legal Assistant | $150.00 | 6.625 | $993.75 |
| Lindsay Funk | Legal Assistant | $150.00 | 6.05 | $907.50 |

| Casey Gilfoil | Legal Assistant | $150.00 | 5.675 | $851.25 |
|---|---|---|---|---|
| Cody Kahoe | Legal Assistant | $150.00 | 4.575 | $686.25 |
| Al Brooks | Legal Assistant | $150.00 | 4.5 | $675.00 |
| Sophie Kosmacher | Legal Assistant | $150.00 | 179.875 | $26,981.25 |
| Kremena Mestanova | Legal Assistant | $150.00 | 160.1 | $24,015.00 |
| Alexandra Stack | Legal Assistant | $150.00 | 145.225 | $21,783.75 |
| Cansu Colakoglu | Legal Assistant | $150.00 | 52.825 | $7,923.75 |
| December Huddleston | Legal Assistant | $150.00 | 7.775 | $1,166.25 |
| Costs | — | — | — | $222,390.08 |
| **TOTAL** | | | | **$1,559,251.71** |

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Entries 371 and 388.

SO ORDERED.

Dated:    March 6, 2020
          New York, New York

Ronnie Abrams
United States District Judge