**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ENRICHETTA RAVINA,**<br><br>      **PLAINTIFF,**<br><br>**-- against --**<br><br>**COLUMBIA UNIVERSITY**<br>**A/K/A THE TRUSTEES OF COLUMBIA**<br>**UNIVERSITY IN THE CITY OF NEW YORK**<br>**AND GEERT BEKAERT,**<br><br>      **DEFENDANTS.** | **Case No. 1:16-cv-02137-RA** |

## DECLARATION OF ALEXANDRA HARWIN IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

I, Alexandra Harwin, hereby declare as follows:

1.      I am a partner at the firm Sanford Heisler Sharp, LLP ("Sanford Heisler Sharp") and co-chair of Sanford Heisler Sharp's National Title VII Practice.  Sanford Heisler Sharp is counsel for Plaintiff Enrichetta Ravina in this lawsuit.

2.      I make this Declaration in further support of Plaintiff's Motion for Attorneys' Fees and Costs based upon personal knowledge.  If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

3.      Columbia's insurer Chubb made payments in this case totaling $511,271.23, corresponding to Plaintiff's remitted compensatory damages verdict plus accrued interest.

4.      Every fact witness that Plaintiff noticed for deposition provided testimony that was relevant to her successful retaliation claims, such as testimony concerning Plaintiff's protected activity.  This deposition testimony includes, but is not limited to, the following examples:

a.      Exhibit A, which contains relevant excerpts from the deposition of Michael K. Dunn, Columbia's former Director of Investigations and Deputy Title IX Coordinator (*see* 27:12-28:9, 32:4-13, 53:2-54:14, 135:2-139:19, 161:3-162:10, and 215:15-223:4).

b.      Exhibit B, which contains relevant excerpts from the deposition of Melissa Rooker, Columbia's former Associate Provost for Equal Opportunity and Affirmative Action (*see* 65:2-18, 89:11-99:17; 129:22-133:25, 178:24-181:14, 214:3-10, and 223:14-226:2).

c.      Exhibit C, which contains relevant excerpts from the deposition of Christopher Brown, who was then Columbia's Vice Provost for Faculty Affairs (*see* 72:17-73:7, 129:24-130:8, 133:6-137:13, 140:23-141:15, 242:6-243:24, 255:13-256:7, and 302:18-303:2).

d.      Exhibit D, which contains relevant excerpts from the deposition of R. Glenn Hubbard, who was the Dean of Columbia Business School (*see* 18:2-19:2, 52:19-55:13, 64:7-24, 110:3-112:19, and 299:14-22).

e.      Exhibit E, which contains relevant excerpts from the deposition of Stephen P. Zeldes, who was the Chair of the Finance and Economics Division at Columbia Business School (*see* 46:12-22, 52:2-56:7, 61:8-72:14, 80:3-11, 86:24-87:14, 88:2-89:16, and 140:2-141:18).

f.      Exhibit F, which contains relevant excerpts from the deposition of Janet Horan, Vice Dean of Administration at Columbia Business School (*see* 20:15-23:22, 28:23-29:14, 31:8-18, 34:13-22, 78:5-81:2, 89:18-92:12, 171:23-172:4, 189:9-190:8, and 216:24-217:13).

g.      Exhibit G, which contains relevant excerpts from the deposition of Katherine W. Phillips, who was the Senior Vice Dean of Columbia Business School (78:25-79:8, 166:8-172:8, and 254:10-259:13).

5.      In addition to the services performed by Columbia's outside counsel, Proskauer Rose LLP, Columbia's in-house legal department was also involved in this matter, including participating in settlement negotiations and attending mediation, deposition, and trial.

6.      After Columbia submitted its opposition brief, Columbia's lead counsel, Betsy Plevan, disclosed to Sanford Heisler Sharp that Proskauer recorded additional hours to this case beyond those listed in Columbia's brief.  Ms. Plevan stated that "[t]he number of hours stated in our papers as billed represents over 90% of the time recorded by Proskauer to this case (as of July 12, 2019)" and that "[i]n addition to the 1,376.3 hours billed to Columbia between July 9 and July 27, 2018, an additional 105 hours were recorded during this period and not billed to Columbia."

7.      In response to questioning from Plaintiff's Counsel after Columbia submitted its opposition brief, Ms. Plevan would not disclose Proskauer's hourly rates, total lodestar, or total fees billed to Columbia in this matter.

8.      In response to questioning from Plaintiff's Counsel after Columbia submitted its opposition brief, Ms. Plevan disclosed only limited information concerning Columbia's expenses. Ms. Plevan disclosed that Columbia retained a firm named RLM TrialGraphix that billed $69,322.27 for services that, according to Ms. Plevan, involved "assist[ing] with the visual display of exhibits at trial," "assist[ing] with developing demonstrative slides" for closing arguments, electronically stamping exhibits with exhibit numbers, and installing a printer at the courthouse.

9.      Ms. Plevan also disclosed that transportation costs billed to Columbia totaled $18,963.13.  By contrast, as reflected in Plaintiff's itemized expense spreadsheet (Dkt. No. 373-3), Sanford Heisler Sharp seeks reimbursement for transportation costs that total $12,514.64.

10.      Attached as Exhibit H are excerpts from the final approval hearing in *Jane Doe 2 v. The Georgetown Synagogue et al.*, Civil Action No. 2014 CAB 8073 (D.C. Super. Ct. 2018)

(*see* 14:13-23, 15:16-18, 17:24-18:9).  Plaintiff's Motion for Attorneys' Fees and Costs quoted from this hearing at Dkt. No. 372 at 18-20 and Dkt. No. 373 ¶¶ 7, 60.

11.     As reflected in the many time entries contained in Dkt. No. 373-1 that are charged at a billing rate of zero, Sanford Heisler Sharp seeks reimbursement for less than 13,000 hours of the more than 13,500 hours that the Firm devoted to this matter.  This includes 245 hours for timekeepers whose time was written off in its entirety (Dkt. No. 373-2 at 2) and over 300 hours for billed timekeepers (whose hours before those write-offs are listed in Dkt. No. 373-2 at 1).

12.     For the instant fee petition, Sanford Heisler Sharp's original time records were adjusted to remove privileged and confidential information, excise entries for which the Firm is not seeking compensation, and promote clarity to facilitate the Court's review (such as correcting typographical errors and spelling out abbreviated terms).

13.     Defendants' pretrial designation of trial exhibits and trial witnesses caused Sanford Heisler Sharp to expend extensive time to prepare for and object to large quantities of evidence that Defendants did not end up using.

14.     Prior to being named a partner at Sanford Heisler Sharp, I had already received accolades for my legal work.  I was one of just five employment lawyers nationwide named a Rising Star by *Law360* in 2017, and I was selected as one of the Top 40 Under 40 Trial Lawyers in New York by the National Trial Lawyers Association in 2016.

15.     For demonstration purposes, Sanford Heisler Sharp calculated that the Firm's total lodestar is reduced by less than 9% if the lodestar billed by Melinda Koster and myself prior to our respective promotions is recalculated using rates for the positions we held before those promotions.

16.     Sanford Heisler Sharp has six offices across the country and employs over eighty legal professionals.

17.     Sanford Heisler Sharp reviewed many hundreds of pages of invoices, receipts, and credit card records to compile the Firm's itemized expense spreadsheet (Dkt. No. 373-3) and the corresponding declaration from the Firm's Chairman (Dkt. No. 373).

18.     Plaintiff's retainer agreement with Sanford Heisler Sharp did not provide that the Firm would absorb any of the expenses for which it now seeks reimbursement.

19.     Consultations with Dr. Goldberg and Professor Rhode before trial shaped the material ultimately presented at trial.  The evidence identified after consultations with Dr. Goldberg was so compelling that Sanford Heisler Sharp determined that it would not be necessary for Dr. Goldberg to testify at trial.

20.     After conducting a diligent search, Counsel determined that the Phillips Club was the option that best satisfied the Firm's needs, considering, *inter alia*, the availability of shared spaces, technical capabilities, and cost-effectiveness.  To conserve costs, multiple trial members who resided outside of Manhattan did not lodge at the Phillips Club during trial and instead stayed in alternative housing in Manhattan during trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of October, 2019, in New York, New York.

Alexandra Harwin